132 Cal.Rptr.2d 733 (2003)
107 Cal.App.4th 498
In re ASIA L., a Person Coming Under the Juvenile Court Law.
Contra Costa County Department of Children and Family Services, Plaintiff and Respondent,
v.
Robert L., Defendant and Appellant.
In re James H. et al., Persons Coming Under the Juvenile Court Law.
Contra Costa County Department of Children and Family Services, Plaintiff and Respondent,
v.
Monica D., Defendant and Appellant.
Nos. A098500, A099079.
Court of Appeal, First District, Division Three.
February 24, 2003.
*734 Office of the County Counsel, Silvano B. Marchesi, County Counsel, Paul Muniz, Deputy County Counsel, for Plaintiff and Respondent Contra Costa County Children and Family Services.
J. Ross Walker, Willits, for Defendant and Appellant Robert L.
Janet Hite Saalfield, Sausalito, for Defendant and Appellant Monica D.
POLLAK, J.
In appeal No. A099079, Monica D. appeals from an order terminating her pa-rental *735 rights with respect to three of her children, Asia, James, and Joel. In appeal No. A098500, Robert L. appeals from the same order terminating his parental rights with respect to his child Asia. The appeals have been consolidated and Robert and Monica raise overlapping arguments.
Specifically, Robert and Monica contend there is insufficient evidence to support the court's finding that there is a likelihood that the children will be adopted; that the trial court abused its discretion in finding that the termination of parental rights would not substantially interfere with sibling relationships; and that the trial court further erred in failing to consider the wishes of the children prior to terminating parental rights. In addition, the parents contend that the trial court failed to secure compliance with the Indian Child Welfare Act (ICWA or the Act). In a prior appeal from the dispositional order regarding Joel (In re Joel G. (May 21, 2002, A095592), 2002 WL 1020657 [nonpub. opn.]), this court determined that there had not been adequate compliance with ICWA, and reversed, subject to reinstatement of the order upon compliance with the Act and consideration of the requirements of Welfare and Institutions Code section 361.3.[1] We conclude here that the court still has not properly secured compliance with ICWA. Moreover, the record does not reflect a likelihood of adoption sufficient to support the termination of Robert and Monica's parental rights.[2] Accordingly, we must again reverse.

Factual and Procedural History
In March 1998, the Contra Costa County Department of Social Services (the department) filed a juvenile dependency petition alleging that then three-year-old James H. and then one-and-a-half-year-old Asia L. came within subdivisions (g) and (i) of section 300 based upon Monica's drug use. Monica admitted certain of the allegations in the petition and the children were placed in the care of her mother. Robert has been in and out of prison throughout the dependency proceedings, and when released on parole his whereabouts have generally been unknown.
On August 25, 1999, the department filed a petition alleging that Joel G., then three days old, came within the meaning of section 300, subdivisions (b), (g) and (j), based upon Monica's drug use and Joel's positive test for drug exposure at birth. On September 15, 1999, Monica admitted to an amended petition alleging only a subdivision (b) cause of action. Throughout the next year, Monica made substantial progress in drug treatment and, in December 1999, Joel was placed in her care. In June 2000, Asia and James were also placed in her care.
In February 2001, however, a supplemental petition was filed alleging that the previous disposition had been ineffective in that Monica had failed to keep her drugtesting appointments and had been absent from the program for two days without making arrangements for the care of her children. All three children were removed from her care. On June 19, 2001, the court sustained the allegations in the supplemental petition and denied Monica reunification services. The court also set a section 366.26 hearing for James and Asia. Monica appealed the dispositional order on the supplemental petition regarding Joel *736 and argued, in addition to other contentions, that the court had failed to secure compliance with ICWA.
The section 366.26 hearing, originally set for October 16, 2001, was continued twice to permit the department to assess the adoptability of Asia and James and was ultimately set for April 9, 2002. On December 19, 2001, the court set a section 366.26 hearing in Joel's case, also to be heard on April 9, 2002. In the meantime, the department was authorized by the court to place Asia and James with a foster family in Stanislaus County because no suitable placement could be found within Contra Costa County. Joel was placed for a portion of this time with his paternal grandmother, but was ultimately removed when his grandmother had financial difficulties and was unable to care for him. He was then placed in an emergency foster home.
At the permanency planning hearing held on April 9, 2002, the children's social worker, Rachel Foster, testified regarding the notice she had given to various Indian tribes as ICWA admittedly required, and the responses she had received. The court concluded that proper notice had been given under ICWA, and terminated parental rights to all three children, consistent with the department's recommendation. Robert and Monica each filed timely notices of appeal.
On May 21, 2002, this court issued its opinion in In re Joel G., supra, A095592, in which it reversed the June 19, 2001 dispositional order as it related to Joel, "subject to reinstatement upon compliance with the ICWA notice requirements." On October 8, 2002, the trial court conducted a further dispositional hearing and set a section 366.26 hearing for January 21, 2003. In light of the ongoing proceedings in Joel's case, the department filed a motion to dismiss this appeal as it pertained to Joel only. The motion was denied.

Discussion
Initially, the department requests that we dismiss Monica's appeal on the ground that the appeal has not been authorized by Monica. Monica's attorney signed the notice of appeal. In the absence of a satisfactory showing that the party did not authorize counsel to sign the notice of appeal, we presume that her counsel had the necessary authority to do so. (In re Malcolm D. (1996) 42 Cal. App.4th 904, 910, 50 Cal.Rptr.2d 148.)
"A lack of consent is shown when a parent, through his or her actions, demonstrates no true interest in preserving parental rights." (In re Sean S. (1996) 46 Cal.App.4th 350, 352, 53 Cal.Rptr.2d 766.) Here, Monica has actively participated in the dependency proceedings. She attended the hearing on April 9, 2002. While she left the hearing early without explanation, she left her papers, book and water behind, indicating that she intended to return. Contrary to the department's assertion, her early departure from the hearing does not necessarily demonstrate a sufficient lack of interest in preserving her parental ties. Nor can any reasonable inference be drawn regarding Monica's level of interest in her children from the fact that her attorney did not sign and file the notice of appeal until two days before the filing deadline.
Monica's conduct is markedly different from that of the parents in the cases relied upon by the department (i.e., In re Sean S., supra, 46 Cal.App.4th 350, 53 Cal. Rptr.2d 766; In re Alma B. (1994) 21 Cal.App.4th 1037, 26 Cal.Rptr.2d 592). In Sean S., the court held that the department made a sufficient showing that the appeal was not authorized where the parent was properly notified of the selection *737 and implementation hearing and could have attended but instead telephoned her attorney and told him she was not going to appear. (46 Cal.App.4th at pp. 352-354, 53 Cal.Rptr.2d 766.) Likewise, in Alma B. the court found a sufficient showing of disinterest in the proceedings where the parent was not present at the hearing and neither the department nor her counsel knew her whereabouts. (21 Cal.App.4th at p. 1043, 26 Cal.Rptr.2d 592.)
Moreover, in opposition to the department's motion to dismiss, Monica's appellate counsel has submitted a declaration stating, "I have spoken with appellant numerous times during the pendancy of both her appeals.... [S]ince the filing of the notice of appeal in this case, appellant has once again made it extremely clear that she is most desirous of regaining custody of her children and pursuing this matter on appeal." Accordingly, we deny the department's request to dismiss the appeal, and we turn to the merits of the challenges to the order terminating parental rights.

1. ICWA Compliance

Monica and Robert question whether the trial court made the necessary determination that ICWA did not apply to the children and reassert that substantial evidence does not support the conclusion that notice had been given in compliance with ICWA. Initially, we reject the contention that the trial court was required to make an express finding that ICWA did not apply. While the record must reflect that the court considered the issue and decided whether ICWA applies, its finding may be either express or implied. (In re Jennifer A. (2002) 103 Cal.App.4th 692, 705, 127 Cal.Rptr.2d 54; In re Levi U. (2000) 78 Cal.App.4th 191, 199, 92 Cal. Rptr.2d 648.) Here the trial court expressly found that "notice had been given pursuant to ICWA" and then proceeded to terminate appellants' parental rights under the usual rather than the heightened ICWA standards. Thus, the court implicitly found that ICWA was not applicable. Nonetheless, the record does not support the finding that the notice given by the department to the tribes satisfied the requirements of ICWA.
Title 25 United States Code section 1912(a) provides in relevant part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." California Rule of Court, rule 1439(g),[3] provides that "the juvenile court hearing shall not proceed until at least 10 days after those entitled to notice under the Act have received notice." Finally, the California Department of Social Services, Child Welfare Services Manual of Policies and Procedures, regulation 31-515.12, requires that the notice given to the Indian child's parent and to the child's tribe be sent on Form SOC 319 entitled "Notice of Hearing" and be received by the Indian child's parent and tribe no later than 20 days prior to the hearing date.
At the April 9, 2002 hearing, Foster testified that she "sent off completed 318 and 319 forms to the [Bureau of Indian Affairs (BIA) ] as well as a list of all Apache and Cheyenne tribes within the United States" and that she "received a number of responses from the tribes.... [O]f those responses, they all indicated that neither parent nor child is registered *738 nor eligible to be registered. The ones that I have not received a letter from the tribe directly, I do have the green certified cards that they did, in fact, receive the 318 and 319 forms but have not received an official response from them." She indicated that she received certified mail receipt cards from all the tribes, as well as from the BIA and Monica, which showed receipt between March 16 and 19, 2002. However, neither copies of the completed 319 forms, return receipt cards nor any other correspondence was received into evidence.
Monica and Robert contend that Foster's testimony is insufficient to demonstrate compliance with ICWA because the forms were mailed to the wrong addresses, and that without reviewing copies of the forms, the court could not and did not verify that the information submitted the tribes was accurate and complete.[4] In In re Marinna J. (2001) 90 Cal.App.4th 731, 739-740, footnote 4, 109 Cal.Rptr.2d 267, the court set out the necessary steps for ensuring compliance with ICWA: satisfy the notice provisions of the Act and to provide a proper record for the juvenile court and appellate courts, [a social service agency] should follow a two-step procedure. First, it should identify any possible tribal affiliations and send proper notice to those entities, return receipt requested, (Rule 1439(f).) Second, [the agency] should provide to the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the minor's status." This two-step procedure was emphasized in two recent cases. (In re H.A. (2002) 103 Cal.App.4th 1206, 1214-1215, 128 Cal.Rptr.2d 12; In re Jennifer A., supra, 103 Cal.App.4th at pp. 702-703, 127 Cal.Rptr.2d 54.) In Jennifer A., the court reversed the trial court's jurisdictional and dispositional orders, holding that the record did not support the court's finding of ICWA compliance where the only evidence received was the social worker's testimony that she had sent notice to the relevant tribe and to the BIA. (In re Jennifer A, supra, 103 Cal.App.4th at pp. 698, 703, 127 Cal.Rptr.2d 54.) The court emphasized that the two-step procedure set forth in Marinna J. had not been followed and held that presentation of the required documents to the appellate court to by request for judicial notice was not an Unavailable solution. (Id. at pp. 702-703, 127 Cal.Rptr.2d 54.) The court noted that without the required documents "`... the court did not have a sufficient record from "To which to make a determination whether there had been compliance with the notice provisions of the ICWA, or whether further inquiry was needed.'" (Id. at p. 703, 127 Cal.Rptr.2d 54.) The court concluded that the error was not harmless, even though the department had presented to the appellate court a letter from the tribe sent two months after the hearing stating that the child was not an Indian child within the meaning of the Act. (Id. at p. 705, 127 Cal.Rptr.2d 54.) The court reasoned *739 that the notice sent to the tribe, of which the court did take judicial notice, omitted family information that seemingly was available and incorrectly related other information, so that it was necessary for the trial court to review the information in the first instance to make the necessary determination of compliance. (Ibid.) Similarly, in H.A., the court warned: "We hold that a party, such as the Department here, who seeks the foster care placement or termination of parental rights to a child who may be eligible for Indian child status, must do the following or face the strong likelihood of reversal on appeal to this court. [¶] First, the Department must complete and serve, pursuant to the terms of 25 United States Code section 1912(a) the `NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD' along with a copy of the dependency petition. Second, the Department must file with the superior court copies of proof of the registered mail or certified mail and the return receipt(s), the completed `NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD' that was served, and any responses received." (In re H. A., supra, 103 Cal.App.4th at pp. 1214-1215, 128 Cal. Rptr.2d 12.) In H. A., the department failed to use the proper 319 form and had not sent the notice by registered mail. The department argued that the error was harmless since it had received a response from the relevant tribe stating that the children were not affiliated with it. The court disagreed, pointing out that although the BIA periodically publishes a current list of designated tribal agents for service of process, the department had not sent the notice to the tribe chairperson or to its designated agent for service of process. (Id. at p. 1213, 128 Cal.Rptr.2d 12.) The court concluded that because there was no showing in the record that the response was from the proper person, the court could not rely on that letter as evidence of the tribe's lack of interest in the proceedings. (Id. at pp. 1213-1214, 128 Cal. Rptr.2d 12.)
Here, the department failed to comply with the second step in In re Marinna J. (90 Cal.App.4th 731, 109 Cal.Rptr.2d 267) by failing to submit the required documentation to the court for its review. While Foster's testimony provides evidence that she did use the correct form and served the notices by registered mail, copies of the forms were never submitted to the court. Hence, the court was unable to evaluate the sufficiency of the notices sent. The department argues that it was unnecessary to submit the form to the court as there is no evidence to suggest either that Foster was untruthful or that the notices were in some fashion defective. Absent the ability to review the forms, however, neither the trial court nor this court has the ability to evaluate whether the forms were defective. Moreover, the record does provide reason to question whether there was a defect in the notice given to several of the tribes because the department failed to serve the notice on the chairperson or designated agent for service of process as required by statute. Rule 1439(e)(2), specifically directs that "[n]otice to the tribe shall be to the tribal chairman unless the tribe has designated another agent for service." Foster testified that she sent notice to the "Apache Business Committee" in Anadarko, Oklahoma, rather than the "Apache Tribe of Oklahoma, Chairperson" as listed in the most recent Federal Register. (66 Fed. Reg. 65725, 67534 (Dec. 20, 2001).) Similarly, notice was addressed to the "Cheyenne-Arapaho Business Committee" rather than the "Cheyenne-Arapaho tribes of Oklahoma, Chairperson;" the "Fort Sill Apache Business Committee" rather than *740 the "Fort Sill Apache Tribe of Oklahoma, Chairperson;" and the "Northern Cheyenne Tribal Council" in Lame Deer rather than the "Northern Cheyenne Tribe of Northern Cheyenne Reservation, Director, Tribal Social Services." Absent some evidence that the various business committees had authority to speak for the tribes or that the responses received by Foster came from an authorized agent, the failure to submit the necessary documents to the court cannot be considered harmless. (In re H. A, supra, 103 Cal.App.4th at pp. 1213-1214,128 Cal.Rptr.2d 12 [no evidence that Enrollment Committee Chairman for the Santa Ynez Band of Mission Indians had authority to speak for tribe when designated agent for service of process under the Federal Register was Santa Ynez Band of Mission Indians, ICWA Coordinator].) Accordingly, the matter must be reversed for further compliance with ICWA.[5]

2. Clear and Convincing Evidence of Adoptability

Robert and Monica also appeal from the order terminating their parental rights on the ground that there is insufficient evidence of the children's adoptability. In order for a juvenile court to terminate parental rights under section 366.26, the court must find by clear and convincing evidence that it is likely that the child will be adopted. (§ 366.26, subd. (c)(1).) We review the juvenile court's order to determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that Asia, James and Joel were likely to be adopted. (§ 366.26, subd. (c)(1); In re Lukas B. (2000) 79 Cal.App.4th 1145, 1154, 94 Cal.Rptr.2d 693.) "Clear and convincing" evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. (In re Jerome D. (2000) 84 Cal.App.4th 1200, 1205, 101 Cal.Rptr.2d 449.)
"The issue of adoptability requires the court to focus on the child, and whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt. [Citations.] It is not necessary that the child already be placed in a preadoptive home, or that a proposed adoptive parent be waiting. [Citations.] However, there must be convincing evidence of the likelihood that adoption will take place within a reasonable time. [Citation.]" (In re Brian P. (2002) 99 Cal.App.4th 616, 624, 121 Cal.Rptr.2d 326.) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent or by some other family." (In re Sarah M. (1994) 22 Cal.App.4th 1642, 1649-1650, 28 Cal.Rptr.2d 82.) Alternatively, evidence of "approved families willing to adopt a child of [this] `age, physical condition, and emotional state'" can be used to evaluate the likelihood of the child's adoption. (In re Jerome D., supra, 84 Cal.App.4th at p. 1205, 101 Cal.Rptr.2d 449; In re Jennilee T. (1992) 3 Cal.App.4th 212, 224-225, 4 Cal.Rptr.2d 101 [finding a *741 likelihood of adoption where the social worker had identified one family within the foster care system and three families outside the system, in addition to a potential relative, who were all willing to adopt a child with potential neurological problems and all the attendant risks].)
The evidence regarding the likelihood that James and Asia will be adopted is as follows. In anticipation of the initial October 2001 permanency planning hearing, Foster submitted a report that indicated that although James suffered from asthma and early exposure to lead, he was a healthy child and that, while he appeared to be physically developing normally, he lacked appropriate socialization skills. At the time of that report, James attended a regular first grade class, and his teacher reported that while he was a bright and energetic child, his behavior prevented him from accomplishing what he was capable of doing. "He needs constant supervision and is often out of control in the classroom to the point that he may not be able to be maintained in the classroom." James' therapist reported that James was a "bright child who is highly responsive to positive attention" but that he was also "extremely hyperactive and in need of medication; he is the most hyperactive child she has ever seen." She said that "James requires a great deal of limit setting and containment as he has a poor attention span and impulse control, has a low frustration tolerance, and makes abrupt changes." In her report, Foster stated that "James has a probability for adoption but it is difficult to place based on the fact that, at this time, there is no identified prospective parent." She requested and was granted a 90-day continuance to further assess James's adoptability.
Foster also prepared a report on Asia in anticipation of the October 2001 hearing. She indicated that while Asia suffers from enuresis, she was overall a healthy child and was on target developmentally. While the report states that Asia is a "super bright child," her teacher also reported that she has a problem with not listening, staying still, and stealing. Asia's therapist reported that she is hyperactive, steals, lies, hoards material items not food, aggravates other children, and pulls her braids out of her head when upset. The report states that the department "believes an ideal home for Asia would be a specialized placement where she is the youngest child; where the parents are `experienced' and capable of dealing with and providing non-punitive structure to a hyperactive child; one where the primary parent stays home; and one that will advocate for, participate in, and follow-up on all physical, mental health, and school related appointments." The report does not reach a conclusion regarding the likelihood of adoption and requests a 90-day continuance to further assess Asia's adoptability. The hearing was continued until January 2002.
In a supplemental report prepared for the January 2002 hearing, Foster indicated that James was undergoing a full developmental/educational assessment and that he had been taking Ritalin with mixed results. She also reported that Asia, while in therapy, was acting out confusion and distress in her play. Foster stated that the department "has determined that the children are adoptable but are in need of specialized placements" and requested a continuance to enable them to review a number of interested families' home studies. In preparation for the April 2002 hearing, Foster submitted an additional report, indicating that in the approximately two to three months since James and Asia were placed with a foster family agency in Stanislaus County, they have "continued to reciprocally connect with the foster parents and older foster brother" and "[a]though *742 James and Asia's foster parents have indicated that they are willing to explore adoption of the children, it is too soon for them to make such a permanent and life changing decision." Regarding the likelihood of adoptability, Foster concludes: "Although there is no identified prospective adoptive parent at this time, Children and Family Services is confident that a prospective adoptive family can be located for James and Asia."
While the age and physical health of James and Asia weigh in favor of adoptability, their emotional and psychological development present a potential obstacle to adoption. The department recognized that James and Asia would require specialized placementwhich at least initially was not available within Contra Costa Countyyet the department failed to provide evidence of approved families willing to adopt children with the developmental problems faced by James and Asia. Moreover, unlike the situation in In re Sarah M., supra, the foster parents' willingness to explore the option of adopting James and Asia is too vague to be considered evidence that some family, if not this foster family, would be willing to adopt these children. (In re Jerome D., supra, 84 Cal.App.4th at p. 1205, 101 Cal.Rptr.2d 449 [stepfather's willingness and desire to adopt child were not sufficient to support the adoptability finding]; In re Amelia S. (1991) 229 Cal.App.3d 1060, 1065, 280 Cal. Rptr. 503 [permanency hearing report indicating that a few foster parents were considering adoption is a far cry from the clear and convincing evidence required to establish the likelihood of adoption].) Likewise, the social worker's conclusion alone is insufficient to support a finding of adoptability. (In re Brian P., supra, 99 Cal.App.4th at p. 624, 121 Cal.Rptr.2d 326.) This evidence simply fails to demonstrate clearly and convincingly that there is a likelihood that Asia and James will be adopted within a reasonable time.
The evidence regarding Joel's adoptability is similarly weak. Foster prepared a report for Joel in preparation for the April 9, 2002 hearing. In it she described Joel as a "cute, smart, hyperactive" two-and-a-half-year-old child. The report indicates that although Joel tested positive for drug exposure at birth and has asthma, he is generally healthy. He is developmentally on target and presents as a happy child although he has a temper when angered or does not get his way. Regarding the likelihood of adoption, the report concludes that Children and Family Services is confident that an adoptive home can be located for Joel. Again, however, the department failed to provide evidence that there were approved families interested in adopting a child similar to Joel. Foster suggests that the department would consider re-placing Joel with his nonbiological paternal grandmother if she got "back on her feet" financially, and alternatively, that the current caretakers for James and Asia have expressed an interest in having Joel placed in their care. These suggestions, however, are too vague and speculative to amount to clear and convincing evidence that Joel is likely to be adopted within a reasonable time. (In re Jerome D, supra, 84 Cal. App.4th 1200, 1205, 101 Cal.Rptr.2d 449.) Accordingly, the record does not support the finding of adoptability of any of the three children.[6]

*743 3. Failure to Consider the Children's Wishes

Monica contends the order must be reversed as to James and Asia because the trial court failed to consider the wishes of the children prior to terminating parental rights. Section 366.26, subdivision (h), requires the court to "consider the wishes of the minor" prior to making a determination as to whether parental rights shall be terminated. Section 366.22, subdivision (b)(5) requires the department to provide the court with "a statement from the child concerning placement and the adoption or guardianship, unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition." "The purpose of the statutory injunction that the court `consider the wishes of the child' simply requires the court to consider what the child's preferences are. It is a reminder to all, but particularly those weighted with the decisionmaking responsibility, that the child is not a cipher in the process. While we are both statutorily mandated and morally constrained to act in the best interests of the child, to the extent possible children should have some voice. It is, after all, their futures we decide, their destinies we begin and their entire lives we affect." (In re Leo M. (1993) 19 Cal.App.4th 1583, 1592-1593, 24 Cal. Rptr.2d 253.)
The department concedes that the wishes of the children were not properly presented by the various reports prepared for the termination hearing and that the court did not consider the wishes of the children as required by the statute. The department contends that Monica failed to raise the issue in the trial court and has therefore waived the issue on appeal. Monica was served with the department's report, and she thus knew that it did not discuss the children's wishes. She failed, however, to argue below that the juvenile court should have obtained an expression of the minors' wishes for a permanent plan. Accordingly, she may well be precluded from presenting the argument here. (In re Amanda D. (1997) 55 Cal.App.4th 813, 819-821, 64 Cal.Rptr.2d 108.)[7] It is unnecessary to decide whether this court should nonetheless enforce the statutory requirement, which is intended for the benefit of the children, since reversal is required on other grounds. On remand, the trial court should consider the wishes of the children as required by section 366.26, subdivision (h).

*744 4. Sibling Visitation

Monica contends that the trial court erred by failing to consider and provide for sibling visitation. Monica does not dispute that prior cases have consistently held that a parent lacks standing to raise the issue of sibling visitation in an appeal from the termination of parental rights. These cases have held that the minor's interest in maintaining a relationship with siblings is unrelated to the parent's interest in reunification. (See, e.g., In re Jasmine J. (1996) 46 Cal.App.4th 1802, 1806-1808, 54 Cal.Rptr.2d 560; In re Nachelle S. (1996) 41 Cal.App.4th 1557, 1560-1562, 49 Cal.Rptr.2d 200.) She contends, however, that these cases all involved orders that predated the effective date of subdivision (c)(1)(E) of section 366.26 (see fn. 6, ante), and that the order in this case was entered after the effective date of that provision. In In re Daniel H. (2002) 99 Cal.App.4th 804, 809-810, 121 Cal.Rptr.2d 475, the court held that the mother lacked standing to challenge the visitation order because the termination order was entered before the effective date of subdivision (c)(1)(E), but the court noted that "[t]he mother persuasively argues that this new sibling relationship exception probably renders the standing issue moot. Because sibling relationships are now a statutory exception to adoption, those relationships directly impact the parent's interest in reunification, an interest that can be kept alive merely by avoiding adoption." We agree that Monica has standing to raise the issue.
Since remand is necessary for other reasons, it is unnecessary to address the department's argument that Monica has waived any claim regarding visitation. It is sufficient to point out that on remand the court should consider sibling visitation when making further placement and case-plan orders. (§ 16002, subd. (b); In re Cliffton B. (2000) 81 Cal.App.4th 415, 427, 96 Cal.Rptr.2d 778.) "The statute contemplates that sibling contact will be an ongoing issue subject to periodic review throughout the dependency proceedings. When the juvenile court terminates parental rights and refers a child for adoption, it retains jurisdiction over that child until the adoption is effected. During that interim period, the juvenile court can make visitation orders as it sees fit, and sibling contact should remain the subject of its concern." (In re Cliffton B., supra, at p. 427, 96 Cal.Rptr.2d 778.)

Disposition
The orders terminating parental rights are reversed and the matter is remanded for further proceedings consistent with this opinion.
We concur: CORRIGAN, Acting P.J., and PARRILLI, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] In light of this determination, we deny the several requests to augment the record that have been filed by the parties.
[3] All further references to rules are to the California Rules of Court.
[4] Monica also contends there is no evidence that she was mailed a completed 319 form, rather than merely a notice of the hearing. However, this claim has been waived because at the April 9, 2002 hearing, Monica's attorney did not raise any concerns about the form of the notice she received. While Monica cannot waive the tribes' rights to proper notice, she can waive procedural irregularities to the extent that they affect only her rights. (In re Jennifer A., supra, 103 Cal.App.4th at p. 707, 127 Cal.Rptr.2d 54.) Moreover, Foster testified that she mailed the 318 and 319 forms to the tribes and that she received return receipts from the tribes and from Monica all within three days. Absent any evidence to the contrary, it is reasonable to assume that Foster complied with the department's guidelines and mailed the 319 form to Monica on the same day she mailed the 319 form to each of the tribes. (See Evid.Code, § 664.)
[5] In the previous appeal from the dispositional order in Joel's case, we reversed subject to reinstatement of the order upon compliance with ICWA. Here, however, a similar condition of reinstatement is not appropriate in light of the insufficiency of the evidence that the children are likely to be adopted, as discussed infra.
[6] Monica and Robert also contend that the trial court abused its discretion by failing to find that termination of parental rights would substantially interfere with the children's sibling relationships. Under section 366.26, subdivision (c)(1)(E), once the court has found that it is likely that a child will be adopted, it must terminate parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child in that "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E).) Here, the department acknowledges that "it certainly appears that the children had significant relationships with each other." However, since the lack of substantial evidence that the children are likely to be adopted requires that this predicate finding be set aside, it is unnecessary to determine whether the potential interference with the sibling relationship alone would have required that the orders terminating parental rights be vacated.
[7] But cf. In re Patricia E. (1985) 174 Cal. App.3d 1, 6, 219 Cal.Rptr. 783, relied upon by Monica, where it was held that a father has standing to raise his child's right to independent representation on appeal from an order terminating his parental rights because his interests were intertwined with the rights of his child.