Filed 1/29/15  In re K.J. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.J., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>D.T.,<br><br>　　　Defendant and Appellant. | A141642<br><br>(Contra Costa County<br>　Super. Ct. No. J1200539) |

　　　This is an appeal from an order terminating the parental rights of D.T., the presumed father of minor, K.J. (father and minor, respectively).  Father challenges this order on the ground that the evidentiary record fails to support the juvenile court's finding based upon clear and convincing evidence that minor was presently adoptable.  We disagree and, thus, affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

　　　Minor was born in July 2011 to mother, T.J., and an unknown male.  Father, although not biologically linked to minor, became his primary caregiver.  However, minor was removed from father's and mother's care in April 2012, when he was eight months old, following a referral to respondent Contra Costa County Children and Family Services Bureau (the bureau) indicating minor's 14-year-old half-sibling had been

1

physically abused by a family friend. At the time of his removal, minor was living with his mother and siblings while father was incarcerated.

Minor was thereafter made a dependent of the juvenile court and placed out of the home in foster care, based upon an April 5, 2012 petition filed under section 300, subdivisions (b) and (j), alleging that minor's home life involved domestic violence, substance abuse and a parent's previous failure to reunify with a sibling.[1] Both parents received reunification services and a minimum of twice-monthly visitation rights pending the next hearing.

The bureau's initial disposition report, filed in July 2012, indicated minor appeared to be developmentally on track and identified no developmental or behavioral concerns in this regard. On July 20, 2012, the juvenile court sustained the allegations in the section 300 petition. The court also determined father was not minor's biological father. At a subsequent contested hearing, father was then found to be minor's presumed father and was granted reunification services. He was also granted a minimum of twice-monthly supervised visits with minor.

A status review report was filed by the bureau in May 2013. This report indicated that minor's pediatrician had concerns about his development and had referred him to the Regional Center. According to the social worker who prepared the report, minor was exhibiting "great delays" in communication and fine motor skills. For example, minor had only recently begun to crawl and to pull himself up to standing with help, although he was nearly two years old. The social worker also reported that, while his current caregiver had said she often felt overwhelmed caring for minor, he was nonetheless a sweet, happy, loving and affectionate toddler who enjoyed being held, made good eye contact, and interacted well with other children. The report concluded that, while minor

---

[1] Minor's 14-year-old half-sister, who was choked and bruised by a houseguest, advised the emergency response social worker that her mother and step-father (also known as "father") engaged in domestic violence and regularly drank alcohol, and that she often cared for minor when her mother went out. She further advised that their home was so chaotic that both she and her siblings would be better off living elsewhere.

had shown some signs of being developmentally delayed, the permanency review team had identified him as adoptable and was seeking a concurrent home for him.[2]  The bureau thus recommended terminating father's reunification services.

On July 19, 2013, following a contested hearing, the juvenile court terminated father's reunification services and set the matter for a section 366.26 permanency planning hearing on November 6, 2013.  In the bureau's November 2013 report, filed in anticipation of this hearing, the social worker described minor as "running around," sleeping through the night and otherwise "on target" in his development.  No medical concerns were indicated, and he was again described as a friendly and affectionate toddler who enjoyed playing with toys and visiting the beach, zoo and parks.  The report further indicated minor had been assessed by the Regional Center and determined to have significant speech and language delays.  Minor was thus found eligible for early intervention services, secondary to speech and language delays.

The social worker also reported minor was adjusting well to his new placement with his maternal second cousin, Sharnita, with whom he began living in October 2013.[3]  Despite his speech and fine motor skill delays, minor was a very active, lovable and affectionate child who enjoyed attention.  Sharnita, in turn, was described as a cooperative prospective adoptive parent who was competently working with the bureau to complete the assessment process.  She adored minor and was committed to providing him a permanent plan.  To that end, a November 2013 referral had been submitted for an adoption home study.

Father did not appear for the November 6, 2013 permanency planning hearing despite proper notice, and the matter was continued to January 8, 2014.  In anticipation of the continued hearing, the bureau filed an addendum report indicating that Sharnita had

---

[2]  The report further noted that the bureau was not working to place minor together with his siblings, as they had different needs and did not get along, and that minor's contact with father had been sporadic.  Moreover, father had presented at visits "under the influence" of a substance.

[3]  Parents had not visited minor in ten months.

continued to work towards completion of the adoption home study by, among other things, submitting fingerprints and completing required documents. Minor, in turn, was receiving weekly speech services and therapy and had demonstrated progress. He was talking more, although his words were often unclear. No other medical, developmental, behavioral or emotional issues were raised as to minor. He had his own room and many appropriate toys and decorations in Sharnita's home. Parents had made no contact with minor or the bureau.

Father appeared for the January 8, 2014 permanency planning hearing, and the court continued it to April 14, 2014 at the bureau's request. Another addendum report was prepared that indicated that Sharnita was continuing to cooperate with the adoption home study, and needed to complete a physical exam and TB test. The bureau expected to complete the adoption home study in the near future. Minor was continuing to progress in his weekly speech therapy and appeared to be benefitting from it, as he was becoming more verbal. Minor continued to be a sweet, friendly, affectionate child, who, aside from allergies and pstosis (drooping eyelid), was healthy and adoptable. He was happy and comfortable in Sharnita's care, and Sharnita adored him and remained committed to giving him a nurturing and permanent home. Father had not visited him since December 2012.

Regarding the proposed adoptive family's social history, the report indicated that Sharnita was married, but did not reside with her husband of two years, who was a truck driver. This situation appeared to work for the prospective adoptive family. Sharnita had full time employment, a high school degree and some college experience. The report further indicated that Sharnita had been provided information regarding the legal and financial rights and responsibilities of an adoptive parent, and had acknowledged that she would be assuming full legal and financial responsibility for minor should the adoption become finalized.

The report also indicated Sharnita had no child welfare history, but did have a criminal record from 1995 that had resulted in jail time and three years of probation. The

bureau had nonetheless concluded that no information had been revealed indicating that Sharnita would not be able to properly care for minor.

At the April 14, 2014 hearing, father again failed to appear, and his attorney's request for a continuance was denied. Father's attorney objected to any findings being made, but did not offer any additional information.

Following this contested hearing, the juvenile court found clear and convincing evidence that minor was likely to be adopted in a reasonable time, and that there was no parental relationship as to either parent that would benefit the minor. Accordingly, the juvenile court adopted the bureau's recommendation to terminate parental rights as to both parents. This timely appeal followed.

## DISCUSSION

On appeal, father contends the juvenile court's finding, by clear and convincing evidence, that minor was likely to be adopted within a reasonable time was not supported by substantial evidence because: (1) minor showed significant signs of having a developmental disability, and (2) the sole prospective adoptive parent, Sharnita, had a legal impediment to adoption in that her husband, who does not live with her, had not signed the consent to adoption required under Family Code section 8603. Accordingly, father contends, the order terminating his parental rights was at best premature given the lack of evidence of any other prospective family interested in adopting minor, and should be reversed. The relevant law is as follows.

"At a section 366.26 hearing, the court may (1) terminate parental rights and free the child for adoption, (2) identify adoption as the permanency plan goal and continue the hearing for no more than 180 days to locate an appropriate adoptive home for the child, (3) appoint a legal guardian, or (4) order the child's placement in long-term foster care. (§ 366.26, subd. (b).) At all proceedings under section 366.26, the court must consider the wishes of the child and act in the best interests of the child. (§ 366.26, subd. (h)(1).)" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1231.) Further, before selecting a permanent plan of adoption, the court must find clear and convincing evidence that the child is likely to be adopted within a reasonable time. (§ 366.26, subd. (c)(1).) If the juvenile court finds

such evidence, it then must terminate parental rights unless termination of parental rights would cause serious detriment to a child under one or more specific statutory exceptions. (§ 366.26, subds. (b)(1), (c)(1).)

"Although a finding of adoptability must be supported by clear and convincing evidence, it is nevertheless a low threshold:  The court must merely determine that it is 'likely' that the child will be adopted within a reasonable time. (§ 366.26, subd. (c)(1); [citation.].) We review that finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53 [82 Cal.Rptr.2d 426].)"  (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.  See also *In re Asia L.* (2003) 107 Cal.App.4th 498, 509-510 [a finding of adoptability is reviewed for substantial evidence].)

Father's precise argument in this case is that minor was not generally adoptable because "[he] was unlikely to be adopted without an approved prospective adoptive parent because there were concerns about his speech and physical developmental delays and [he] had signs of being developmentally disabled."  In addition, father argues that minor was not specifically adoptable because the home of the prospective adoptive family (to wit, minor's maternal second cousin, Sharnita) had not yet been approved for adoption by the bureau and had a "legal impediment" to adoption given that Sharnita's husband, who lived apart from her, had not submitted his consent to the adoption.  In a related argument, father also contends he received ineffective assistance from counsel based on his attorney's failure to raise in the lower court the issue of Sharnita's legal impediment to adopting minor.

For reasons that follow, we reject father's challenge to the juvenile court's finding by clear and convincing evidence that minor is generally adoptable, in that he is likely to be adopted by an adoptive parent or parents within a reasonable period of time, whether that parent be Sharnita or some other suitable person.  Accordingly, we affirm the court's order terminating parental rights without reaching father's secondary arguments that minor was not specifically adoptable due to a legal impediment to Sharnita's ability to

6

adopt him, and that his counsel was ineffective in failing to raise the issue of this legal impediment in the lower court.

As the California Supreme Court explains: " 'The issue of adoptability . . . focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]' [Citation.]" (*In re Zeth S*. (2003) 31 Cal.4th 396, 406.) " ' "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." ' [Citation.]" (*In re Asia L.*, *supra*, 107 Cal.App.4th at p. 510.) Thus, if "the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home." (*In re B.D.*, *supra*, 159 Cal.App.4th at pp. 1231-1232.)

In this case, the record reveals the following evidence supporting the court's adoptability finding with respect to minor. First, the bureau's initial disposition report from July 2012 assessed minor as developmentally on track, and noted no concerns with respect to his overall health or development. While the subsequent May 2013 status review report noted that minor's pediatrician had concerns regarding his development (and, in particular, his fine motor skills), the social worker nonetheless described minor at that time as a sweet, loving, affectionate child who made good eye contact and enjoyed the company of, and interacted well with, other children. Thus, while noting some signs of developmental delays, the social worker deemed minor adoptable in light of his many other positive traits.

Similarly, the bureau's next report, prepared in November 2013, described minor as a lovable, affectionate, and active toddler, who enjoyed playing with toys and visiting parks, the zoo and the beach. Further, while the report noted minor had been medically assessed as having significant speech and language delays, he nonetheless was found in all other respects to be developmentally on target and in good heath. This report also

7

mentioned for the first time Sharnita's strong desire to adopt minor, and her ongoing cooperation with the bureau to complete the adoption assessment process.

The January 2014 report filed in conjunction with the scheduled permanency planning hearing again emphasized minor's friendly, affectionate, "typical toddler" personality. This report also noted that minor had been engaged in weekly speech and language therapy, and had already demonstrated notable progress. As before, no other medical, developmental, emotional or behavioral concerns were indicated aside from the minor issues of allergies and a drooping eyelid.

Thus, collectively, the bureau's reports consistently identify minor's many positive attributes and conclude he is adoptable. Other evidence in the record supports the bureau's opinions, including Sharnita's own positive experience in caring for minor. Indeed, all evidence seems to indicate minor was doing quite well under Sharnita's care (she "adored" him), and would likewise do well under the care of another competent, nurturing person. The fact that minor was receiving weekly speech and language therapy, and that he still struggled with word clarity, does nothing to undermine these findings, particularly where he was already reported to have made significant progress in his therapy.

Given the substantial evidence of minor's attractive young age, his general physical, emotional and mental well-being, and his improving speech and language skills, the juvenile court was entitled to find him likely to be adopted by either Sharnita and her husband, or some other acceptable family. (See *In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1651 [affirming the juvenile court's finding that the children were generally adoptable based upon substantial evidence of "the minors' young ages and their good physical and emotional health, progress in therapy, intellectual and academic growth, and ability to develop interpersonal relationships"]. Cf. *In re Asia L*., *supra*, 107 Cal.App.4th at p. 510 [reversing the juvenile court's finding that the children were generally adoptable for lack of substantial evidence where the children had severe emotional and psychological problems, including hyperactivity and lack of self control, which required constant supervision].) Even assuming for the sake of argument that the evidence of

minor's developmental delays could support a contrary finding, they provide no basis for reversing the juvenile court's adoptability finding in this case. (*In re K.B.*, *supra*, 173 Cal.App.4th at p. 1292; *In re Asia L., supra,* 107 Cal.App.4th at pp. 509-510.)

Moreover, in light of this conclusion, we need not address father's remaining arguments regarding whether Sharnita's family had a legal impediment to adopting minor under Family Code section 8603 (requiring spousal consent to adoption), and regarding whether his counsel provided ineffective assistance by failing to alert the court to this potential legal impediment. " 'Where the social worker opines that the minor is likely to be adopted based solely on the existence of a prospective adoptive parent who is willing to adopt the minor, an inquiry may be made into whether there is any legal impediment to adoption by that parent [citations]. In such cases, the existence of one of these legal impediments to adoption is relevant because the legal impediment would preclude the very basis upon which the social worker formed the opinion that the minor is likely to be adopted. [Citation.]' (*In re Sarah M*. [(1994)] 22 Cal.App.4th [1642,] 1650.)" (*In re Brandon T*. (2008) 164 Cal.App.4th 1400, 1408-1409.) However, as we just explained, this is not such a case. Rather, here, the social worker opined that minor would likely be adopted based on, among other factors, his young age, overall good mental and physical health and pleasant disposition. Accordingly, regardless of whether there is a legal impediment to minor's adoption by Sharnita, the juvenile court's adoptability finding must stand.[4] (See *In re Sarah M*., *supra*, 22 Cal.App.4th at p. 1651.)

---

[4] Generally, a prospective adoptive family's suitability is irrelevant to the issue of whether a child is likely to be adopted: "General suitability to adopt is a subjective matter which does not constitute a legal impediment to adoption. If inquiry into the suitability of prospective adoptive parents were permitted in section 366.26 hearings, we envision that many hearings would degenerate into subjective attacks on all prospective adoptive families in efforts to avoid termination of parental rights. Such a result is not envisioned by the statutory scheme." (*In re Sarah M*., *supra*, 22 Cal.App.4th at p. 1650. Cf. *In re Carl R*. (2005) 128 Cal.App.4th 1051, 1061-1062 [considering the suitability of a prospective adoptive family where the child was specifically adoptable, but not generally adoptable, given that the child had disabilities requiring intensive, total care for life].)

**DISPOSITION**

The juvenile court's order terminating father's parental rights is affirmed.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.

*In re K.J.*, A141642