Filed 7/21/15  In re A.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| | D067140 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518713A) |
| v. | |
| FELICIA W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and

Respondent.

At the time the trial court terminated defendant and appellant Felicia W.'s (mother) parental rights over her then eight-year-old son, A.H., A.H. had been in a prospective adoptive home for three months and was reported to be doing well, after two earlier placements had been unsuccessful because of behavioral problems. At the permanent placement hearing, the trial court also received stipulated testimony from a social worker to the effect there were 18 local families interested in adopting a child with A.H.'s characteristics. Given these circumstances, and contrary to mother's argument on appeal, there was sufficient evidence that A.H. was adoptable and that termination of parental rights was therefore required by Welfare and Institutions Code section 366.26, subdivision (c).[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A.H. was born in March 2006. On June 13, 2013, plaintiff and respondent San Diego County Health and Human Services Agency (the agency) filed a petition alleging A.H. and his younger half sibling, K., were dependents because, while living in a motel room with the children, mother had permitted her boyfriend to smoke methamphetamine in the bathroom. Three of mother's older children were in out-of-home placements at the time the petition was filed.

Upon further investigation by the agency, A.H. disclosed that he had observed incidents of domestic violence between mother and her boyfriend, and his therapist

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

believed A.H. was suffering from post-traumatic stress disorder. A.H.'s therapist was also struck by the lack of attachment between A.H. and mother.

The trial court sustained the petition and initially detained A.H. with a relative caregiver. In January 2014, the trial court terminated reunification services. Mother had not participated in the reunification plan and had failed to maintain regular contact with A.H. and K.

Although in many respects A.H. did well in the relative placement, in March 2014, the caregiver asked that he be removed because he was being defiant and not following house rules. A.H. was then placed in a foster home, where he stayed until August 19, 2014, when, because of aggressive behavior, his foster parents asked that he be removed.

Between August 2014 and the continued December 2014 permanent placement hearing, A.H. was in a fost-adopt home and doing very well. In October 2014, the social worker described the fost-adopt placement as follows: "[A.H.] remains in the home he moved to on 8/19/2014. The caregivers were given [A.H.]'s history, and appear to have reasonable expectations for [A.H.]'s behaviors. They report being able to have good parental boundaries beginning in addition to having fun. CASS was in the home to assist with the transition, and the case was closed successfully with the anticipation that the placement would be permanent. [A.H.] has opened up with caregivers about his feelings and some of his past experiences, which was not the case at the other placements. The caregivers state that [A.H.] sometimes does not want to listen, and will have periods of up to 45 minutes where he goes off to the side before resuming homework or other tasks he does not enjoy. The family is able to talk about the experiences and move forward

3

together. They also communicate openly about any difficulties and are open to services and ideas on how to best parent [A.H.]

"[A.H.] reports comfort in the home, and has expressed that he likes that his current caregivers explain their reasoning for decisions [A.H.] may not like instead of a simplistic, 'because we said so.' He is also able to practice his Spanish, as the mother of one of the caregivers lives in the home and is Spanish-speaking. When asked on a scale of 1-10, [A.H.] reported that he is at a '9' for wanting to stay in this home permanently. He initially could not think of what it would take to make it a 10,[] but did state he would be certain that he would be able to stay in the home after more time passes."

At the permanent placement hearing, the parties stipulated that, if called as a witness, the social worker would testify that there were 18 approved adoptive families in San Diego County interested in adopting a boy A.H.'s age and with his ethnic background; that the family where he was placed had been approved for adoption; that the family has had A.H. in their home for three months; and that the family was prepared to move forward with adoption.

The trial court found that A.H. was both generally and specifically adoptable and terminated mother's parental rights as well as the parental rights of A.H.'s father.

Mother filed a timely notice of appeal.

DISCUSSION

Mother argues on appeal that the agency failed to show A.H. was adoptable within the meaning of section 366.26, subdivision (c)(1) and therefore erred in terminating her parental rights. We find no error.

4

1.  Legal Principles

In *In re B.D.* (2008) 159 Cal.App.4th 1218, 1231-1232, we set forth the principles that govern mother's contentions on appeal: "At a section 366.26 hearing, the court may (1) terminate parental rights and free the child for adoption, (2) identify adoption as the permanency plan goal and continue the hearing for no more than 180 days to locate an appropriate adoptive home for the child, (3) appoint a legal guardian, or (4) order the child's placement in long-term foster care. (§ 366.26, subd. (b).) At all proceedings under section 366.26, the court must consider the wishes of the child and act in the best interests of the child. (§ 366.26, subd. (h)(1).)

"To select adoption as the permanency plan, the court must find by clear and convincing evidence the child is likely to be adopted within a reasonable time. The fact that the child is not yet placed with a family prepared to adopt the child, 'shall not constitute a basis for the court to conclude that it is not likely the child will be adopted.' [Citation.] If the court finds that the child is likely to be adopted, it must order adoption unless termination of parental rights would cause serious detriment to a child under one or more specific statutory exceptions. [Citations.] [¶] . . . [¶]

"A finding of adoptability requires 'clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time.' [Citation.] The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. [Citation.]

"If the child is considered generally adoptable, we do not examine the suitability

5

of the prospective adoptive home.  [Citation.]  When the child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption.  [Citation.]  The juvenile court should also explore a child's feelings toward his or her parents, foster parents and prospective adoptive family.  [Citations.]

"On review, we determine whether the record contains substantial evidence from which the court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time.  [Citations.]  The evidence must be sufficiently strong to command the unhesitating assent of every reasonable mind.  [Citation.]  We give the court's adoptability finding the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of the judgment of the trial court."

2.  Analysis

Here, the 18 homes identified by the social worker as well as the approved adoptive home where A.H. was placed at the time of the hearing, where he was happy and the family was willing to go forward with adoption, show that A.H. was both generally adoptable and specifically adoptable.

The fact that A.H. had previously experienced unsuccessful placements did not prevent a finding of either general or specific adoptability.  In particular, the possibility of *future* medical or psychological challenges does not prevent a finding of adoptability. (See *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 224.)  Rather, as this record shows, while finding a placement where A.H.'s emotional needs could be addressed successfully took some effort on the part of the agency, the agency met that challenge.  The agency's

6

efforts, the fost-adopt family's willingness and ability to accommodate A.H.'s needs and his response, demonstrate both a general and very specific likelihood that he will be adopted. No greater showing was required. (See *In re Zeth S.* (2009) 31 Cal.4th 396, 406.)

The circumstances on this record are in marked contrast to those considered in *In re B.D.* and *In re Asia L.* (2003) 107 Cal.App.4th 498. As the agency points out, in *In re B.D.*, no approved home that would take a sibling group of five had been identified and the oldest sibling of the group was opposed to adoption; rather only one, unapproved, family had expressed an interest in adopting all five siblings. In *In re Asia*, both children suffered from fairly profound emotional and developmental deficits and the agency had failed to provide evidence that there was an approved family willing to adopt them. Given those situations, it was error to find that the children in *In re B.D.* and *In re Asia L.* were adoptable. (See *In re B.D.*, *supra*, 159 Cal.App.4th at pp. 1231-1232; *In re Asia L.*, *supra*, 107 Cal.App.4th at p. 512.) Here of course, the agency found and placed A.H. with an approved family that was willing to adopt him. That fact by itself prevents us from overturning the trial court's adoptability finding. (See *In re Zeth S.*, *supra*, 31 Cal.4th at p. 406.)

DISPOSITION

The trial court's order terminating mother's parental rights is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

McINTYRE, J.