Filed 12/24/25  In re A.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.H., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086570 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J294468 & J294469) |
| v. | OPINION |
| B.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Joseph R. Barrell, County Counsel, and Laura Feingold, Deputy County Counsel, for Plaintiff and Respondent.

In this appeal from an order terminating parental rights, B.H. (mother) contends the trial court's finding that two of her children were adoptable was not supported by substantial evidence. We disagree and affirm.

BACKGROUND

This dependency action concerns two of mother's daughters, A.H. (born 2021) and B.H. (born 2020). Mother has six older children who are not relevant to this appeal. Both children were born in San Diego County before mother brought them back to Mexico. However, neither child's birth was ever recorded, and therefore neither has a birth certificate.

Plaintiff and respondent San Bernardino County Children and Family Services (the department) received a referral in September 2022 requesting mother's children be repatriated from Mexico. The referral alleged all eight children, plus mother and the father of some of the children, were living in a car in Tijuana. The referral further alleged the children were "malnourished, neglected and surviving in poor conditions." Later that month Mexican authorities transferred custody of the children to the department.

The department filed petitions under Welfare and Institutions Code section 300[1] alleging A.H. and B.H. fell under subdivisions (b) and (g). Specifically the petitions

_____

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

2

alleged, among other things, that mother failed to ensure the children's safety, failed to provide adequate medical care, has a history of substance abuse, and already had her children detained by Mexican authorities. The department then placed the children with maternal uncle and his partner.

The court held a jurisdiction and disposition hearing in November 2022. It found true the petition's allegations against mother under section 300, subdivision (b). The court removed the children from mother and ordered family reunification services.

Mother failed to reunify with the children, and in July 2023 the court terminated her reunification services and set a section 366.26 hearing.

Prior to the section 366.26 hearing the department tried and failed to find the children's birth certificates. In January 2024 the vital records department told the department they were unable to locate any public record of the children. The department re-submitted a request for the children's records with updated information, but informed the court that "[i]f vital records return again with no public record, a delayed registration of birth will need to be completed. Adoption services cannot continue towards finalization at this time and termination of parental rights to the children, [A.H.] and [B.H.], is not recommended until verification of United States citizenship is received." Because of the issues with the children's vital records, in March 2024 the court ordered the permanent plan for the children be placement in foster care with a permanent plan of adoption.

In September 2024 the department told the court that a "delayed registration of birth for the children is in process." The court eventually set a section 366.26 hearing for July 2025.

At a hearing on Indian Child Welfare Act issues held in May 2025 the court reminded the department it did not have a birth certificate for at least one child. It told the department "if you're planning on the Court proceeding on 7-7, just have a birth certificate or a request for continuance so that could be looked into." After the department told the court they did not have the birth certificate, the court clarified that it "could proceed if that's what the Department wants if I made a certain finding, but we prefer a birth certificate."

Before the continued section 366.26 hearing, the department recommended terminating parental rights and informed the court it did not have the children's birth certificates. Instead, the department asked the court "to move forward with the termination of parental rights," and "in the meantime I'll make the request with the birth certificate from the probate court."

As of July 2025 the children were thriving in their placement. They referred to their caregivers as "mom and dad" and had a "loving and playful" relationship with them. The caregivers had already adopted three of the children's siblings and were the children's prospective adoptive parents.

At the section 366.26 hearing later that month, the court terminated parental rights and found both children adoptable. The court requested birth certificates, and the

4

department again told the court it was seeking those documents through the probate court. The court ordered the department to provide an update on that process 45 days from the hearing.

ANALYSIS

Mother argues the trial court erred by finding the children adoptable because they lacked birth certificates at the time of that finding. We disagree.

"A finding of adoptability requires 'clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time.' [Citations.] The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. [Citation.]" (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) Adoption is the Legislature's preferred permanent plan. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) Thus, "[i]f the court finds the child is likely to be adopted within a reasonable time, the juvenile court is required to terminate parental rights unless the parent shows that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)(A) and (B)." (*In re Michael G.*, *supra*, at p. 589.)

"In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400.) "We give the court's finding of adoptability the

5

benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming." (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1562.)

Mother does not argue that the children are not adoptable because their age, physical condition, or emotional health would make it difficult to find someone willing to adopt them. Indeed, the children already have prospective adoptive parents, and "a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family.*' [Citation.]" (*In re Asia L.* (2003) 107 Cal.App.4th 498, 510.)

Mother's only argument is that the children are not adoptable because they lack birth certificates. This argument is unavailing. As the department correctly points out, a birth certificate is not a barrier to adoption, and there is an existing legal method for addressing the children's lack of birth certificates either after or during the adoption process.

A new birth certificate "shall be established" upon receipt of "[a] report of adoption from any court of record that has jurisdiction of the child in this state . . . for any child born in California and whose certificate of birth is on file." (Health & Saf. Code § 102635, subd. (a).) "For court reports of adoptions received from any court of record of this State . . . that has jurisdiction of a child born in this State and for whom no original record of birth is on file . . . the court report of adoption shall constitute a court order delayed birth registration; provided, the court report contains a statement of the date and place of birth." (Health & Saf. Code § 102690.) Thus, the law not only allows adoption

6

without a birth certificate, but it also has a procedure for obtaining a birth certificate as a consequence of adoption.

Nor is there any reason to believe the court could not make that factual finding. The dates and places of birth for each child are not in contest; mother's brief concedes their dates and places of birth. The record also contains sufficient evidence for the court to attest to this information. For instance, the department has two referrals—one for each relevant child—from San Diego hospitals shortly after each child's birth. In both cases mother tested positive for methamphetamines in San Diego County hospitals shortly after giving birth. The referrals contend B.H. was delivered in an ambulance shortly after mother crossed the border into the United States, while A.H. was born in the border patrol parking lot. Mother also told the department the children were born in two different San Diego County hospitals. There is therefore no reason to believe the court could not state the date and place of birth based on the information in the record and/or information the department already has.

Nevertheless, mother argues the department has admitted it cannot proceed with adoption without birth certificates. Specifically, she points to the department's statements that without birth certificates "[a]doption services cannot continue . . . at this time," and that it needed to seek a delayed registration of birth before proceeding with adoption. However, this appears to have been (at most) a misstatement by the department, as mother provides no authority to support the proposition that an adoption cannot proceed without a birth certificate. The court itself acknowledged birth

certificates were not strictly necessary, and that it "could proceed," without birth certificates "if I made a certain finding, but we prefer a birth certificate."

In short, mother has not demonstrated that the children's lack of birth certificates is either a legal or practical bar to their adoption. Either the department successfully obtains a delayed registration of birth before adoption, or the court's report of adoption "shall constitute a court order delayed birth registration." (Health and Saf. Code § 102690.) Either way, there is substantial evidence to support the juvenile court's implied finding that the lack of birth certificates does not make the children unlikely to be adopted within a reasonable time, or otherwise change the likelihood the children will be adopted in general.

In fact, after we issued this tentative but before oral argument the department requested we augment the record by taking judicial notice of orders from the San Bernardino County Superior Court establishing the fact of birth for both children and creating delayed registrations of birth. Mother did not oppose the department's attempts to augment the record and waived oral argument. We grant the department's request, take judicial notice of these documents, and conclude that because the children now have official birth records mother's only argument on appeal is now inapposite.

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
                                                    J.

We concur:


McKINSTER _____
          Acting P. J.


MILLER _____
                              J.