Filed 8/18/21  In re Amanda S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Amanda S., a Person Coming Under the Juvenile Court Law. | B310425 <br><br> Los Angeles County Super. Ct. No. 18CCJP07515B |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.H., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Conditionally reversed with directions.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Amir Pichvai for Plaintiff and Respondent.

Father appeals from the juvenile court's order terminating his parental rights to Amanda, now ten years old, under Welfare and Institutions Code[1] section 366.26. He does not contest the merits of that decision. Rather, father challenges the court's finding that it had no reason to know Amanda was an Indian child before ordering his parental rights terminated. Father contends the finding was in error because the juvenile court and Los Angeles County Department of Children and Family Services (Department) failed to comply with their duty of initial and continual inquiry into whether Amanda was an Indian child under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We agree the Department failed to complete its inquiry into the potential application of ICWA through mother's parentage, and the juvenile court failed to ensure the Department made its required inquiry before implicitly finding ICWA did not apply. We therefore conditionally reverse the order terminating father's parental rights and remand for further proceedings.

## BACKGROUND

Because father's appeal raises only the issue of ICWA compliance, our summary of the factual and procedural history is brief. Amanda is father's only child. Her older maternal half-sister, Faith, is also involved in this dependency case. Only Amanda is the subject of this appeal; mother did not appeal.

Amanda and Faith each were subject to the juvenile court's jurisdiction in earlier, separate dependency proceedings. Amanda became a dependent of the juvenile court in July 2013.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

In June 2015, the court terminated its jurisdiction and released Amanda to home of parents.

1. ***Summary of current dependency proceeding***

The family again came to the attention of the Department in August 2018 when it received a report alleging mother and father had engaged in domestic violence while Amanda was home.[2] Mother left the home.

The record shows the Department was unable to reach mother until October 19, 2018, when she called Amanda on her iPad and a social worker briefly spoke to her. The Department's next contact with mother was by telephone on November 7 and 8, 2018. The social worker explained why the Department had been trying to reach mother (since August). Mother told the social worker she was in Sacramento looking for work and would not be back "for quite some time."

In November 2018, the Department filed a section 300 petition on behalf of Amanda and Faith based on parents' history of domestic violence and mother's history of substance abuse, amended in January 2019 to add allegations about father's substance abuse and criminal history. The court detained Amanda from both parents on November 26, 2018.

The Department could not reach mother or father in January 2019. In its January 14, 2019 jurisdiction/disposition

---

[2] Faith was living with maternal grandmother. In 2007, the juvenile court declared Faith a dependent (along with another child of mother's). Maternal grandmother became Faith's legal guardian in 2008, but the court terminated the legal guardianship in October 2015 and ordered Faith home of mother. It is unclear when Faith returned to maternal grandmother's care.

report, the Department reported mother's whereabouts were unknown and she had not maintained contact with the Department.

The juvenile court partially sustained the amended petition on February 4, 2019, placing Amanda with maternal grandmother.[3]  After that hearing, the Department had contact with mother twice in February 2019 and twice in June 2019. The social worker attempted to explain the reunification process to mother, but each time mother said she did not want to participate in any court ordered services.  The Department reported mother "refused to answer any questions, sign consent forms for the minors or participate with any court orders at this time."  Father also refused to meet with the Department or participate in any court ordered services.

The court terminated father's and mother's reunification services on September 25, 2019, and January 22, 2020, respectively.  Neither parent was present at those hearings or at an earlier review hearing in August 2019.  By the January 22, 2020 hearing, mother "ha[d] . . . gone missing."  The Department had conducted a due diligence search for her for two months to no avail.  Mother's whereabouts remained unknown until May 2020, when maternal grandmother reported mother had moved to Oklahoma.

Due to the pandemic, the matter was continued until February 2021.  (Mother returned to California at some point before then.)  The juvenile court held a section 366.26 hearing

---

[3]     Although parents did not attend the February 4, 2019 combined jurisdiction and disposition hearing, maternal grandmother did.

4

on February 1, 2021, that it continued to February 8.  At the February 1 hearing, counsel entered a special appearance on mother's behalf to request a continuance to assess whether any *Ansley* issues existed.[4]  That brief hearing was held over Webex; mother made no statements, but the court's minute order states she and father were present.

Neither parent appeared at the continued February 8 hearing, however.  The court found the children adoptable, terminated mother's and father's parental rights, and designated maternal grandmother as the prospective adoptive parent.

## 2.    Facts relating to ICWA inquiry

The Department's November 21, 2018 detention report states ICWA does not apply.  The Department reported father denied Amanda had any Native American heritage, and, based on the Department's September 2006 jurisdiction report (relating to the earlier dependency involving Faith), mother signed a "DCFS 5649" stating her children did not have Indian ancestry. The Department also attached to its section 300 petition two ICWA-010(A) forms with the social worker's declarations that Amanda and Faith had no known Indian ancestry based on the Department's questioning of father on September 27, 2018, and of mother in 2006, respectively.

Father, the children, paternal grandmother, and maternal grandmother were present at the November 26, 2018 detention hearing; mother was not.  That same day, father signed and filed

---

[4]    Counsel was referring to the discussion in *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 480 concerning the absence of due process as undermining the court's initial jurisdiction.  At the February 8, 2021 hearing, counsel confirmed mother was not raising any *Ansley* issues.

5

an ICWA-020 form stating he had no Indian ancestry. The court acknowledged father's denial of American Indian heritage on the record. The court then asked maternal grandmother if mother had "any American Indian heritage?" She responded, "My grandmother. But it has not been documented." When the court asked, "Was a tribe ever mentioned," she said, "No." The court then made the following order:

> "Okay. So I'm going to order the Department to contact you, grandma, and they're going to ask you some additional questions. If a tribe is identified[,] I'll order notice to the Tribe Bureau of Indian Affairs, Department of the Interior. If no tribe is identified, no notice is required."

The court's minute order entered after the hearing states, "The Court does not have a reason to know [Amanda] is an Indian Child, as defined under ICWA." The court ordered parents to keep the Department, their attorneys, and the court "aware of any new information relating to possible ICWA status."

The Department's jurisdiction/disposition report notes that, on November 26, 2018, the court found ICWA does not apply. The Department's status review reports filed July 24, 2019 and December 30, 2019, state ICWA "does or may apply." Thereafter, the Department's reports, including its section 366.26 reports, reiterate that, on November 26, 2018, the court found ICWA did not apply.

## DISCUSSION

Father contends the juvenile court's order terminating his parental rights must be conditionally reversed because the court and Department failed to comply with ICWA's "initial inquiry and continual duty of inquiry requirements." He argues his

6

"sole challenge" to the court's ICWA finding is that "the court had no reason to know whether Amanda was an Indian child before ordering parental rights terminated because . . . the court fail[ed] to comply with the ICWA initial inquiry."

1. ***ICWA inquiry requirements***

"ICWA reflects 'a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family.' [Citation.] Both ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565, fn. omitted (*D.F.*).) "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*).)

Under California law, the juvenile court and the Department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition "may be an Indian child." (§ 224.2, subd. (a); *D.F., supra*, 55 Cal.App.5th at p. 566.)[5] "This continuing duty can be divided into three phases:

---

[5]    As the Department notes, the Legislature enacted changes to the state's ICWA-related statutes, including section 224.2, effective January 1, 2019. (See *Austin J., supra*, 47 Cal.App.5th at p. 884.) Because father challenges the court's implicit finding that it had no reason to know Amanda was an Indian child

7

the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) The Department's initial duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The juvenile court, in turn, must make a similar inquiry when each parent first appears in court: "[T]he court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c); *D.F.,* at p. 566; Cal. Rules of Court, rule 5.481(a)(2)(A).)[6]

A duty of further inquiry arises when the Department or the juvenile court "has reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd (e).) This further inquiry "includes: 1) interviewing the parents and extended family members to gather required information; 2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may

underlying its February 8, 2021 order terminating his parental rights, the current statute—as amended in 2020—applies. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 320 (*A.M.*) [juvenile court had duty to determine whether children were Indian children based on facts and law that existed at time of § 366.26 hearing].)

[6]    The court also must "require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status" and instruct the parties "to inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.'" (*D.F., supra*, 55 Cal.App.5th at p. 566; Cal. Rules of Court, rule 5.481(a)(2)(B)-(C).)

8

be a member or eligible for membership in; and 3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility." (*D.F., supra*, 55 Cal.App.5th at pp. 566-567, fn. omitted; § 224.2, subd. (e)(2)(A)-(C); Cal. Rules of Court, rule 5.481(a)(4).)

The Legislature amended section 224.2, subdivision (e), effective September 18, 2020, to add, "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know [that a child is an Indian child] enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1); see Stats. 2020, ch. 104, § 15, eff. Sept. 18, 2020.)

Among those grounds relevant here giving rise to a "reason to know a child . . . is an Indian child," are: "[a] person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child"; and "[a]ny participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child." (§ 224.2, subd. (d)(1), (3).) Once the Department or juvenile court has "reason to know" an Indian child is involved, notice under ICWA must be given to the child's "parents or legal guardian, Indian custodian,

if any, and the child's tribe."  (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)  Notice is not at issue here.

## 2.  *Standard of review*

When the facts are undisputed, we independently review whether the requirements of ICWA have been satisfied.  (*D.F., supra*, 55 Cal.App.5th at p. 565.)  We review the juvenile court's ICWA findings under the substantial evidence test and determine whether the juvenile court's order is supported by " 'reasonable, credible evidence of solid value.' "  (*Ibid.*)  We must uphold the juvenile court's orders and findings " 'if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' "  (*Ibid.*)

## 3.  *The Department did not complete its ICWA inquiry as to mother*

The court did not explicitly find ICWA did not apply in its February 8, 2021 order terminating father's parental rights.  As father notes, however, the court implicitly found ICWA inapplicable based on its November 26, 2018 finding that it had no reason to know Amanda was an Indian child and statement it would not order notice to any tribe or the Bureau of Indian Affairs.  (See *A.M., supra*, 47 Cal.App.5th at p. 314, fn. 4 [order terminating parental rights that did not mention ICWA was " 'necessarily premised on a current finding by the juvenile court that it had no reason to know' " children were Indian children and ICWA notice thus was not required]; *In re Michael V.* (2016) 3 Cal.App.5th 225, 234 [essential finding implicit in order terminating parental rights grounded on earlier ICWA rulings]; *In re Asia L.* (2003) 107 Cal.App.4th 498, 506 [court implicitly found ICWA did not apply based on finding notice had been given under ICWA].)  Father contends the court's finding was in error

10

because it never fulfilled its initial duty of inquiry—or ensured the Department fulfilled its duty—under section 224.2.

The evidence established the juvenile court and the Department satisfied their duty of initial inquiry under ICWA *as to father*. The Department attached ICWA-010(A) to its section 300 petition with the social worker's declaration that, on September 27, 2018, father denied Amanda had any known Indian ancestry. And, on November 26, 2018, father completed ICWA-020 similarly attesting he had no known Indian ancestry. The court acknowledged father's denial of Native American heritage at the detention hearing. Based on that inquiry, there was no reason to believe Amanda was an Indian child through father's parentage to trigger a duty to make "further inquiry" as to his side of the family, including paternal grandmother, as father seems to suggest. (See *Austin J., supra*, 47 Cal.App.5th at p. 888 [no duty to make further inquiry of father's side of the family based on his in-court statement and parental notification of Indian status declaration indicating no Indian ancestry].)

Mother, on the other hand, did not appear at any court hearing, except for her special appearance through counsel at the brief February 1, 2021 section 366.26 hearing. Mother made no statements at that hearing; her specially appearing counsel simply asked for a continuance. Mother never made a true first appearance, therefore, at which the court could ask her about her Indian ancestry or direct her to file an ICWA-020 form. The court had the social worker's declaration that in 2006— before Amanda was born—mother confirmed Faith had no known Indian ancestry. Naturally, if Faith did not have Indian ancestry through mother's parentage neither would Amanda. Due to

11

mother's own conduct in failing to attend the hearings,[7] the court never had an opportunity to ask mother if her 2006 denial of Native American heritage remained true or to ask her to complete an ICWA-020 form.

Father also argues the Department never made an initial inquiry of mother about whether Amanda may be an Indian child despite having repeated contact with her. The evidence shows that, like the court, the Department did not have that opportunity. The Department had limited phone contact with mother—who was in Sacramento—before the detention hearing. Moreover, the Department knew mother already had denied Indian parentage in the earlier dependency proceeding.

The Department's contact with mother after the children were declared dependents was equally limited. Mother did not wish to participate in any court ordered services, refused to answer any questions, would not sign any consent forms for the children, and went missing. Given mother's lack of cooperation, the Department had no real opportunity to ask mother about her or Amanda's potential Native American heritage. Because mother's own conduct prevented the Department from inquiring of her, we do not agree it failed in its initial inquiry when it did not ask mother about Amanda's Indian ancestry.

The same cannot be said for the Department's contact with maternal grandmother. Father argues no initial ICWA inquiry was made of the maternal relatives, but that is not entirely true. At the November 2018 detention hearing, the court directly asked maternal grandmother if mother had any American Indian heritage. Maternal grandmother responded, "My grandmother,"

---

[7]     The court found notice was proper for all hearings.

12

but said no tribe ever had been mentioned and admitted her grandmother's Native American ancestry had not been documented. But, while the court made an initial inquiry of maternal grandmother, the Department did not. Nor did the court ensure the Department fulfilled its duty to inquire of maternal grandmother.

We agree with the Department that maternal grandmother's statements are too vague to establish a *reason to know* Amanda had Native American ancestry. Nor do they demonstrate mother or Amanda had an affiliation with a federally recognized tribe. Nevertheless, we cannot conclude the court and Department satisfied their duty of inquiry.

Maternal grandmother may not have known of any specific tribal connection or documentation supporting her grandmother's tribal status, but her statement that mother had American Indian heritage through her grandmother is information "suggesting" mother "may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)[8] The juvenile court apparently thought so too—it ordered the Department to ask maternal grandmother "additional questions" presumably to see if she had other information relevant to its initial ICWA inquiry. As the court said at the hearing, if a tribe were identified, it would order notice, but if no tribe were identified, no notice would be required.

---

[8] Although the statute did not include this definition at the time the juvenile court made its initial finding, as we discussed, that finding was subsumed in its February 2021 order terminating father's parental rights. At that time, the definition applied.

13

The Department relies on *Austin J.*'s holding that "Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member." (*Austin J., supra*, 47 Cal.App.5th at p. 889.)  The appellate court there concluded sufficient evidence supported the trial court's implied finding that the duty of inquiry under ICWA had been satisfied.  (*Id.* at p. 887.)  The mother, at her first appearance in court, said she had been told maternal grandmother, who was deceased, may have had Cherokee ancestry and filed an ICWA-020 form stating her children may have Indian ancestry.  (*Id.* at p. 878.)  A Department social worker called mother after the hearing to question her further, and mother told the social worker her aunt may have more information.  (*Ibid.*)  The social worker called the aunt, but the aunt could say only that mother's maternal grandmother " 'may have had Cherokee heritage,' " and mother's maternal grandfather " 'possibly had heritage,' " but she did not know the tribe.  (*Ibid.*)  The court concluded mother's statements that she " 'may have Indian ancestry' " and had been told her mother had Cherokee ancestry did not support "a reason to believe" the children were Indian children under ICWA.  (*Id.* at p. 888.)  The information was " 'too vague, attenuated and speculative' " to indicate a possible tribal connection.  (*Id.* at pp. 888–889.)

The Department notes maternal grandmother's information about potential Indian ancestry was "even more speculative and attenuated" than the information in *Austin J.* where mother and her aunt named a potential tribe.  We do not disagree.  But, the Department here never followed up with maternal grandmother as it did with the mother and her aunt in *Austin J.*  It never determined, therefore, that no additional

14

information existed to give it a reason to believe Amanda was an Indian child to trigger a duty to investigate further.

Although maternal grandmother herself could not provide the name of a tribe to the Department, had it questioned her, the Department could have learned, for example, whether maternal grandmother's grandmother was still living. If she were, the Department could have asked her about her Native American ancestry. Maternal grandmother also could have given the Department her mother's contact information (maternal great-grandmother). She told the social worker mother sometimes stayed with maternal great-grandmother. Maternal great-grandmother may have had more information about whether her own mother had ever mentioned having an affiliation with a specific tribe, or could have confirmed there was no tribal information to give.

And, unlike with mother, the Department was in regular contact with maternal grandmother. She was Faith's caregiver and became Amanda's caregiver in February 2019 after the court sustained the section 300 petition. If the Department asked her for additional information or for the contact information of other maternal relatives, the record does not reflect it. Nor does the record reflect the court asked the Department about what it learned from—or whether it completed—the questioning of maternal grandmother that the court had ordered. Yet, the Department's July and December 2019 status review reports state, ICWA "does or may apply." By its own admission, therefore, the Department had a reason to believe Amanda may be an Indian child.

Moreover, *Austin J.* was decided before the Legislature amended section 224.2, subdivision (e) to include language that

the court or Department has a "reason to believe" a child is an Indian child when the court or social worker "has information suggesting" one of the parents or child "may be eligible for membership in an Indian tribe." (See *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14 [noting *Austin J.* observed the Legislature did not define phrase "reason to believe" in version of statute enacted in 2018, effective January 1, 2019].) The Department nevertheless contends there was no evidence suggesting Amanda was an Indian child under the amended statute to trigger a duty of further inquiry. But, as father asserts, the Department never completed its *initial* inquiry as ordered by the court.

Whether we characterize the Department's questioning of maternal grandmother as part of its initial duty to inquire or its duty of further inquiry, in these circumstances—given maternal grandmother's statements and the court's order—the Department had a duty to question her to find out if any other relatives may have had information relevant to its ICWA inquiry.[9] The record is clear the Department did not fulfill that duty.

Accordingly, we agree with father substantial evidence does not support the trial court's implied finding that ICWA does not apply. We therefore conditionally reverse the order terminating father's parental rights and remand the matter to the juvenile court with directions to order the Department to complete its ICWA inquiry of maternal relatives, and if they can reach her,

---

[9] The Department also argues there is no evidence in the record that Amanda was found to be an Indian child in the earlier dependency proceeding. But, the record also does not reflect the Department questioned maternal grandmother as part of that earlier dependency.

16

mother.  If the Department's inquiry leads to the identification of a tribe, then it should make further inquiry, including sending ICWA notices, as appropriate.  However, if the Department's inquiry does not lead to information—such as the identification of a tribe—giving it a reason to believe Amanda is an Indian child, then no further inquiry is necessary.  (See § 224.2, subd. (e).)

The court must then determine, on the record, whether the ICWA inquiry, and notice requirements if applicable, have been satisfied and whether Amanda is an Indian child as defined by ICWA.  If the court finds she is, it must conduct new section 366.26 hearings in compliance with ICWA and related California law.  If not, the court is to reinstate immediately its original section 366.26 order.  (See *In re S.R.* (2021) 64 Cal.App.5th 303, 317.)

## DISPOSITION

We conditionally reverse the section 366.26 order and remand to the juvenile court to direct the Department to comply with the inquiry—and if applicable, notice—provisions of ICWA and related California law and for further proceedings consistent with this opinion.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

HILL, J.*

---

* Judge of the Santa Barbara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.