Filed 3/16/23  In re Emma C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re EMMA C., a Person Coming Under the Juvenile Court Law. | B318281 (Los Angeles County Super. Ct. No. 19LJJP00831B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. NATASHA H. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed in part, vacated and remanded in part for further proceedings.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant Natasha H.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Daniel C.

Dawyn R. Harrison, Interim County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Natasha H. (mother) and Daniel C. (father) appeal the juvenile court's order exerting jurisdiction over their daughter, Emma C., and its related dispositional order on the ground that the court's finding, at the detention hearing, that Emma was not an "Indian child" within the meaning of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.[1]) (ICWA) was not supported by substantial evidence. For the reasons discussed below, we affirm the court's jurisdictional and dispositional orders, but vacate its ICWA finding and remand.

### FACTS AND PROCEDURAL BACKGROUND

Mother has two children—Larissa H. (born November 2019) and Emma C. (born September 2021). Father is the presumed father of Larissa and Emma.

After mother tested positive for methamphetamines when Larissa was born, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Larissa because mother's substance abuse placed Larissa at substantial

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

risk of serious physical harm and father failed to protect Larissa from that harm (rendering dependency jurisdiction appropriate pursuant to subdivision (b)(1) of section 300). In March 2020, the juvenile court declared Larissa a dependent child, removed her from mother and father, and ordered the Department to provide the parents with reunification services.

In the last few months of her pregnancy with Emma, mother tested positive for methamphetamines three times. When Emma was six days old, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Emma (1) due to mother's substance abuse and father's failure to protect Emma from that abuse (rendering jurisdiction appropriate pursuant to subdivision (b)(1) of section 300), and (2) due to Emma's sibling being the victim of abuse or neglect (rendering jurisdiction appropriate pursuant to subdivision (j) of section 300); both circumstances, the petition alleged, placed Emma at substantial risk of serious physical harm.

At a detention hearing held in September 2021, the juvenile court found that it had no "reason to know that [Emma] is an Indian Child, as defined under ICWA."[2] When questioned by the Department, both mother and father denied any Indian ancestry, and they also denied any Indian ancestry on their ICWA-020 forms. However, at that time and in the months that followed, the Department had contact with or potential access to several relatives—chiefly, the paternal grandparents, a maternal cousin, two paternal aunts, and various maternal relatives living

---

[2] The detention hearing was mother's first appearance, but the court did not ask mother whether she knew or had reason to know that Emma is an Indian child.

in Michigan; the Department did not ask any of these relatives about Emma's possible Indian heritage.

After a contested hearing that spanned from October 2021 through January 2022,[3] the juvenile court sustained both allegations, removed Emma from her parents, and ordered further reunification services. The court did not make any further ICWA findings.

Father and mother filed timely appeals from the juvenile court's jurisdictional and dispositional orders.

## DISCUSSION

Father and mother argue that the Department did not comply with its initial duty of inquiry under ICWA, but they ask for different remedies: Father asks us to "remand" the case to the juvenile court so the Department can comply with that duty; mother asks us to "reverse" the juvenile court's "orders finding that [the Department] satisfied its [initial] duty of inquiry" under ICWA. The Department has moved this court to dismiss both appeals as moot because, in the months that this case has been on appeal, the juvenile court reminded the Department of its continuing duty of inquiry under ICWA, and the Department has spoken to some (but not all) of the relatives. Although the parents' notices of appeal challenge only the juvenile court's jurisdictional and dispositional orders in which the court did not make any ICWA finding, we construe their appeal as challenging both the court's *express* finding in the detention order that ICWA does not apply as well as the court's *implicit* finding in the

---

[3] The first session of the adjudication hearing convened on October 4, 2021, was father's first appearance, but the court did not ask father whether he knew or had reason to know that Emma is an Indian child.

4

jurisdictional and dispositional orders that ICWA still does not apply. (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 15 [ICWA issue cognizable on appeal from termination of parental rights even though no express ICWA finding was made at that hearing because termination "necessarily subsumed a present determination of ICWA's inapplicability"]; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 683 [erroneous ICWA finding implicitly incorporated into later orders]; *In re Asia L.* (2003) 107 Cal.App.4th 498, 506 [ICWA finding may be either express or implicit]; see also *In re B.P.* (2020) 49 Cal.App.5th 886, 889-890 [section 395 permits challenges to pre-disposition detention order when appeal is filed from jurisdictional/dispositional order].)

All of the parties seem to be in agreement that the Department did not discharge its initial duty of inquiry under ICWA, and we concur in this assessment. ICWA and corresponding statutes that our Legislature enacted to implement ICWA assign the juvenile court and the Department "three distinct duties" aimed at assessing whether a child in a dependency action is an "Indian child," and hence a child who should not be separated from their tribal family through adoption or foster care placement. (§§ 224.2, 224.3; *Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) Only the first duty is at issue here—namely, the initial "duty" of the Department and the juvenile court "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty by "asking" family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) For these purposes, an "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological

child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).) The duty to inquire extends not only to the child's parents, but also to others, including but not limited to, "extended family members." (§ 224.2, subd. (b).) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant present" "whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).) Although mother and father denied any Indian heritage, it is undisputed that the Department did not ask many of the "extended family members" it contacted or knew of about Emma's potential status as an "Indian child."[4]

As a consequence, substantial evidence does not support the juvenile court's finding—explicit in the detention order and implicit in the dispositional order—that Emma is not an Indian child. That is because the court's finding necessarily contains an "implied finding" that the Department also "complied with its

---

[4] Mother also challenges the juvenile court's failure to fulfill its initial duty of inquiry under ICWA to "ask" mother and father at their "first appearance" in Emma's case whether they "know[] or ha[ve] reason to know that [Emma] is an Indian child." (§ 224.2, subd. (c).) To be sure, "the absence of information" on an ICWA-020 form "regarding possible Indian ancestry does not relieve the court of its affirmative responsibility to inquire at the first appearance of each party" of the child's status as an Indian child. (*In re T.G.* (2020) 58 Cal.App.5th 275, 293.) However, short of procuring a time machine, mother does not identify what remedy an appellate court can grant to address a juvenile court's failure to question the parents *at their first appearances* (because any post-appeal appearance would no longer be their "first appearance"). In any event, we need not resolve the issue because we are vacating the court's finding that ICWA does not apply.

duty of initial inquiry" under ICWA (*In re Y.M.* (2022) 82 Cal.App.5th 901, 909), and because, as we just noted, the Department did not so comply.

So this raises the question: What is the appropriate remedy when an appellate court determines, *on appeal from an order prior to termination of parental rights,* that the ICWA duty of initial inquiry has not been satisfied?[5]

By our count, the California appellate courts have thus far provided five different rules in answering this question. The first rule is to affirm the juvenile court's jurisdictional and dispositional findings, to vacate the court's finding that ICWA does not apply, and to remand for the Department to comply with its ICWA duties. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 563-564, 567-568.) The second rule is to affirm the juvenile court's findings in their entirety, on the rationale that the issue of ICWA compliance remains before the juvenile court at all times and the Department will have time to correct any deficiencies. (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1154; *In re S.H.* (2022) 82 Cal.App.5th 166, 171, 173, 175-179.) The third rule is to dismiss the appeal as moot, on the theory that "no effective relief" may be granted because any ICWA deficiencies can be cured in future proceedings. (*In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638-639 & fn. 2.) The fourth rule is to treat an appeal from a finding that ICWA does not apply as premature (and hence not yet

---

[5]     This is a different question than what the remedy is when the appellate court determines, *on appeal from an order terminating parental rights*, that the ICWA duty of initial inquiry has not been satisfied. The California appellate courts are similarly fractured about how to answer this question as well, but we need not delve into that morass here.

"ripe") because such a finding can necessarily be altered prior to the termination of parental rights. (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461.) And the fifth and (thus far) final rule is to construe the appeal as a writ petition, and to evaluate the merits of the Department's compliance with ICWA. (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 387-389, 391-392.)

The fact that the appellate courts have so badly splintered cries out for guidance from our Supreme Court or from our Legislature.

In the meantime, however, we have to decide appeals and hence have to pick one of the five rules (or come up with a sixth). We elect to go with the first rule—that is, to affirm the juvenile court's jurisdictional and dispositional findings (because neither parent attacks those findings), to vacate the juvenile court's finding that ICWA does not apply (because all of the parties agree that this includes an "implied finding" that the Department has complied with its initial duty of inquiry that is not supported by substantial evidence), and to remand for the Department to continue to comply with that duty. In our view, to unequivocally affirm leaves intact a judicial finding of ICWA compliance that is not—as the parties concede here—supported by substantial evidence; that the juvenile court may make a different finding regarding the Department's compliance with ICWA at some different and later point in time does not, in our view, render the finding before us now sufficiently valid to affirm (under the second rule), or moot (under the third rule), or unripe (under the fourth rule). And where a dispositional order is separately appealable, we see no point in severing the court's ICWA finding and construing just part of the appeal as a petition for writ review.

In adopting the first rule, we accordingly deny the Department's motion to dismiss this appeal as moot. The Department does not argue that it has *completely* complied with its initial duty of inquiry, only that it has taken some additional steps; indeed, the Department has not spoken with all of the relatives identified by the parents in their briefs on appeal, so there is still effective relief to be granted on appeal. (*In re D.P.* (2023) 14 Cal.5th 266, 277-278.) Thus, we have no reason to examine the minute orders and Department reports submitted in support of its mootness argument, and accordingly deny the Department's request for judicial notice.

## DISPOSITION

The detention, jurisdictional, and dispositional orders are affirmed in part; the juvenile court's finding (express in the detention order and implicit in the jurisdictional and dispositional orders) that Emma is not an "Indian child" is vacated, and the matter is remanded for further proceedings in which (1) the Department shall make reasonable efforts to ask all known and available family members whether Emma is or may be an Indian child; (2) the Department shall document these efforts to the juvenile court; (3) the juvenile court shall make a finding regarding ICWA's applicability; and (4) depending on the court's finding, the court and the Department shall proceed in accordance with sections 224.2 and 224.4.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

10