Filed 8/10/23  In re Duane D. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DUANE D., JR., a Person Coming Under the Juvenile Court Law. | B323312 (Los Angeles County Super. Ct. No. 22LJJP00186A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DUANE D., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robin R. Kesler, Judge Pro Tempore.  Affirmed in part, vacated and remanded in part for further proceedings.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Duane D. (father) appeals the juvenile court's order exerting dependency jurisdiction over his son as well as the related dispositional order. Father does not challenge the substance of those orders; instead, he argues that the juvenile court's implied finding that the Department of Children and Family Services (the Department) fulfilled its duty of further inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.[1]) (ICWA) is incorrect. The Department concedes that father's challenge has merit. As explained below, the appropriate remedy is to affirm the court's jurisdictional and dispositional orders, but to vacate its implied finding of ICWA compliance and remand.

## FACTS AND PROCEDURAL BACKGROUND

Father shares one child with Anita A. (mother)—Duane D., Jr. (born July 2021).

## I. The Petition and ICWA Findings at the Detention Hearing

After the Department received a referral that mother used methamphetamine, including in Duane's presence, and became "violent," it filed a petition in May 2022 asking the juvenile court to exert dependency jurisdiction over Duane. In an amended

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

petition filed the next month, the Department alleged that jurisdiction was warranted due to (1) mother's conduct in subjecting Duane's half sister (whom mother had by another father) to severe physical abuse when the half sister was two years old, (2) mother's substance abuse and father's failure to protect Duane from that abuse, and (3) the parents' history of domestic violence; the Department alleged that this conduct "places [Duane] at risk of serious physical harm, damage, danger, and failure to protect," thereby rendering jurisdiction appropriate under section 300, subdivisions (a), (b)(1) and (j).

Prior to filing the petition, the Department asked the parents whether Duane may have any Native American heritage. During an interview, mother stated she has Mohegan ancestry. In a "Parental Notification of Indian Status" form, mother reaffirmed that she "may have Indian ancestry," and recommended that the Department contact maternal grandmother for additional information. Father also filled out that form, but indicated he had no Indian heritage.

Based on these responses, the Department along with its petition filed an "Indian Child Inquiry" form stating that the Department had "reason to believe [Duane] is or may be an Indian Child." Based on this information, the juvenile court at a May 2022 detention hearing found that it had no "reason to know that ICWA applies as to [f]ather," but found that "there may be some . . . Native American/Indian heritage in . . . mother's background" and ordered the Department "to investigate" that claim.

## II. The Department's Further Inquiries of the Parents and Their Families

The Department conducted several interviews of mother's and father's families, and learned that:

- Mother has 10 siblings or half siblings—eight on her mother's side and two on her father's side—with whom she is in contact and who are a "support system" for her. She reported that maternal grandfather lives in St. Louis, Missouri, and she does not speak to him.

- Maternal grandmother reported that her family has *both* Mohegan *and* Cherokee heritage.

- Father has three siblings and is in contact with them, but he is not in contact with paternal grandfather.

- Paternal grandmother said the family has Iroquois and Cherokee heritage.

## III. The Department's Further Inquiries of Pertinent Tribes

Based on the information obtained from the parents and their families, the Department in June 2022 sent inquiries—but not formal notices—to (1) three Cherokee tribes (namely, the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, and the Eastern Band of Cherokee Indians), (2) the Mohegan Tribe, (3) two Iroquois tribes (namely, the Tuscarora Nation and the Saint Regis Mohawk Tribe), and (4) the Bureau of Indian Affairs (BIA). Although the inquiries themselves are not in the record, the return receipts are as well as the tribes' responsive letters stating:

- As to the Cherokee Nation, the information provided by the Department was "not complete" and the tribe needed additional information—namely, the middle name and date of

birth for maternal grandfather—"[i]n order to verify Cherokee heritage."

- As to the United Keetoowah Band of Cherokee Indians, the tribe was "unable to establish . . . heritage" "[b]ased on the information . . . provided."

- As to the Eastern Band of Cherokee Indians, Duane "is neither registered nor eligible to register as a member of th[e] tribe" "based on the information received."

- As to the Mohegan Tribe, it had "no record" of the family members identified.

- As to the Tuscarora Nation, enrollment "follows the mother's lineage (matrilineal)" and mother "is not an enrolled member" so Duane also is "not . . . enrolled" and is "not eligible for enrollment."

- As to the Saint Regis Mohawk Tribe, the tribe "was unable to find any link of tribal affiliation" after it "researched the names of the biological parents, as well as other listed relatives."

## IV. The Department's Further Inquiries and the Tribe's Response

To gather the information that the Cherokee Nation requested regarding maternal grandfather, the Department "attempted to inquire" of mother, but was "unable to receive further information from" her.[2] Maternal grandmother told the Department that she has not seen or spoken to maternal

---

[2] This language makes it unclear whether (1) mother did not respond at all to the Department's inquiry, or (2) mother responded, but denied knowledge of maternal grandfather's middle name and date of birth.

grandfather (her ex-husband) for many years, and did not recall his middle name or date of birth.

The Department informally transmitted this information to the Cherokee Nation, which responded that "none of the names provided for direct biological relatives can be found" and that "[u]nknown relations are not researched." It concluded that Duane is "not an 'Indian child' [for purposes of ICWA] in relation to the Cherokee Nation," but that "[a]ny incorrect or omitted information could invalidate this determination."

## V.     The Jurisdictional and Dispositional Orders

At the jurisdictional hearing in August 2022, the juvenile court sustained the allegations under subdivisions (b)(1) and (j) of section 300 regarding the physical abuse of Duane's half sibling, mother's substance abuse, and father's failure to protect Duane from that abuse; the court dismissed the allegations under subdivisions (a) and (b) regarding the parents' domestic violence.

At a contested dispositional hearing in September 2022, the juvenile court removed Duane from his parents and ordered reunification services. The minute order does not contain any further ICWA findings; the court also made no oral ICWA finding at the hearing other than to comment that it "know[s] the Department is given [sic] notice for American Indian heritage. I'm not sure, though I saw a notice to the Iroquois."

## VI.    Father's Appeal

Father filed a timely appeal.

## VII.   Post-Appeal Events[3]

In March 2023, the juvenile court (1) ordered the Department to "interview" or "attempt to interview all extended

---

3      We grant the Department's request for judicial notice. (Evid. Code, §§ 452, subd. (c), 459.)

family members about whether" Duane is an Indian child, and to "document all its efforts," and (2) stated that it would "review[] the report" and "make a finding regarding the ICWA's applicability." In early May 2023, the Department filed a report indicating that (1) it spoke to one of mother's siblings, who relayed that mother's family has Choctaw, "Barefoot," and Cherokee heritage; (2) it spoke to another of mother's siblings, who reported that the family's Mohegan and Cherokee heritage derive from the maternal great grandmother, who was dead; and (3) it spoke to maternal grandmother who confirmed maternal great grandmother's death; all three relatives refused to provide contact information for other maternal relatives. The Department's report also indicated that it spoke with paternal grandmother, who confirmed possible Iroquois, Cherokee, and Mohawk heritage but refused to give contact information regarding paternal grandfather or other paternal relatives. A few days later, the juvenile court held a six-month status review hearing, and ordered the Department to "notice all appropriate tribes and the [Bureau of Indian Affairs]" prior to the 12-month status review hearing set for November 2023.

## DISCUSSION

Father argues that the Department did not comply with its duties under ICWA; specifically, he asserts that (1) the Department did not comply with its duty of further inquiry, and (2) the juvenile court erred in making an implied finding at the dispositional hearing that ICWA does not apply because the Department's communications with the tribes were not filed with the court for it to review before making that finding. Father asks us to "reverse" the court's "orders finding that [the Department] satisfied its duty of inquiry" and to "remand" for the court to

7

make a "proper finding under" ICWA. The Department concedes that father's "contentions have merit," but nevertheless has moved this Court to dismiss the appeal as moot in light of the post-appeal events enumerated above.

These competing arguments present two issues: (1) Was there error under ICWA, and (2) if so, what is the appropriate remedy at this point in time?

## I. Was There ICWA Error?

### A. *Pertinent law*

ICWA was enacted "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies,'" and "aims to keep Indian children connected to Indian families." (*Haaland v. Brackeen* (2023) __ U.S. __, __ [143 S.Ct. 1609, 1623, 216 L.Ed.2d 254].) To that end, under ICWA and the corresponding statutes the California Legislature enacted to implement it (§§ 224-224.6), a juvenile court and the Department have duties aimed at assessing whether a child in a dependency action is an "Indian child." (§§ 224.2, 224.3.) An "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal law definition].) By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry, or 'blood quantum.'" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), quoting 81 Fed.Reg. 38801-38802 (June 14, 2016).)

The Department and juvenile court have "three distinct duties" under ICWA. (*In re D.S.* (2020) 46 Cal.App.5th 1041,

8

1052 (*D.S.*); *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884 [same].)  The initial "duty" of the Department and the court is "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).)  The Department discharges this duty by "asking" family members "whether the child is, or may be, an Indian child."  (*Id.*, subd. (b).)  This includes inquiring of not only the child's parents, but also others, including but not limited to, "extended family members."  (*Ibid.*)  For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant present" "whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).)

The second duty is the duty of the Department or the juvenile court to "make further inquiry regarding the possible Indian status of the child."  (§ 224.2, subd. (e).)  This duty is triggered if the Department or court "has reason to believe that an Indian child is involved" (*ibid.*), and, once triggered, obligates the Department to conduct a "more robust investigation" and to undertake "'meaningful effort'" through further interviews aimed at gathering information, through contacting the BIA and state department of social services for assistance, and through contacting the relevant Indian tribe(s).  (*Id.*, subd. (e)(2); *In re M.M.* (2022) 81 Cal.App.5th 61, 70, review granted Oct. 12, 2022, S276099; *In re K.T.* (2022) 76 Cal.App.5th 732, 744 (*K.T.*); *In re D.F.* (2020) 55 Cal.App.5th 558, 566-567.)  The Department or court "has reason to believe that an Indian child is involved" if the Department or court "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," including information "indicat[ing]" but not "establish[ing]" the existence of any of the

six circumstances satisfying the "reason to know" a child is an Indian child, detailed next. (§ 224.2, subd. (e)(1).)

The third duty is the duty to notify the relevant Indian tribe(s). (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) This duty is triggered if the Department or the court "knows or has reason to know . . . that an Indian child is involved" based on the inquiries performed under the second duty. (§ 224.3, subd. (a).) The Department or juvenile court has "reason to know a child involved in a proceeding is an Indian child" in one of six statutorily defined circumstances—namely, when (1) "[a] person having an interest in the child . . . informs the court that the child is an Indian child" (§ 224.2, subd. (d)(1)); (2) "[a]ny participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child" (*id.*, subd. (d)(3)); (3) "[t]he child . . . gives the court reason to know that the child is an Indian child" (*id.*, subd. (d)(4)); (4) the child or the parents reside, or are domiciled, "on a reservation or in an Alaskan Native village" (*id.*, subd. (d)(2)); (5) "the child is or has been a ward of a tribal court" (*id.*, subd. (d)(5)); or (6) "either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe" (*id.*, subd. (d)(6)).

In assessing whether ICWA has been violated, we review any questions of law de novo, but review the court's ICWA findings for substantial evidence. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

**B.** *Analysis*

The parties seem to agree that the Department's duty of further inquiry under ICWA was triggered and that the

10

Department did not meaningfully discharge that duty by the time of the dispositional order that is before us on appeal. We also agree.

The Department's duty of further inquiry was certainly triggered. Based on mother's initial interview, the Department reported prior to the detention hearing that "Native American Indian ancestry does or may apply." (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 319 [agency's report that ICWA "'does or may apply'" indicates it had reason to believe an Indian child may be involved, triggering duty of further inquiry].) Although the juvenile court initially found—based on father's initial disavowal of any Indian heritage—that it had no "reason to know that ICWA applies as to [f]ather," the Department's interviews of father's relatives uncovered reason to believe that father also may have Indian heritage. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 [paternal grandmother's statement that she had Cherokee ancestry triggered duty of further inquiry]; *In re T.G.* (2020) 58 Cal.App.5th 275, 292 [mother's statement indicating possible Indian ancestry through her paternal grandfather triggered duty of further inquiry]; *In re Dominic F.* (2020) 55 Cal.App.5th 558, 569 (*Dominic F.*) [further inquiry required where court orders agency to "'look into it'"].)

Yet the Department did not meaningfully satisfy its duty of further inquiry. Contrary to what father argues, the Department's inquiry to the BIA and the six different tribes identified by the maternal and paternal relatives was not the Department discharging its duty to give formal notice to the tribes (that is, the third duty under ICWA); rather, it was the Department informally contacting the tribes as part of its duty of further inquiry (that is, the second duty under ICWA). Thus, the

11

Department satisfied a portion of its duty of further inquiry when it contacted the BIA and the tribes. Where the Department fell short, however, was in its further interviews of the maternal and paternal relatives. The Cherokee Nation informed the Department that it needed maternal grandfather's middle name and date of birth in order to determine Duane's Cherokee heritage, but all the Department did was ask mother and maternal grandmother; it did not try to ask any of mother's other 10 siblings and half siblings who were part of her "support system" and did not even use maternal grandfather's name and residence in St. Louis to run a simple online search for the information requested by the Cherokee Nation. This was not a "'meaningful effort.'" (*K.T.*, *supra*, 76 Cal.App.5th at p. 744.) The Department also knew that Duane may have Iroquois and Cherokee heritage through father, but did not make any effort to contact paternal grandfather or any of father's three siblings. (See *K.T.*, at pp. 743-744 [agency failed to satisfy duty of further inquiry by failing to, among other things, contact grandparents and aunt].) Again, the Department's limited interviews failed to discharge its duty of further inquiry.

Although the juvenile court did not expressly find, as part of its dispositional order, that ICWA did not apply to Duane, we infer an implied finding to that effect because the court did not explicitly order any further inquiry or the giving of formal notice to the tribes, leaving the Department nothing further to do. Although implied ICWA findings are generally permissible (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506), father urges us not to rely on the court's implied finding in this case because the Department never filed the inquiries it sent to the tribes with the juvenile court, thereby depriving the court of the ability to assess

12

whether the Department discharged its duty to give notice to the tribes.  To be sure, father is correct that an implied finding that the Department complied with its duty to give notice is inherently defective if the Department does not provide the notices it sent to the tribe to the juvenile court.  (*Asia L.*, at pp. 507-509.)  But the Department here was not contacting the tribes in order to fulfill its duty to give formal notice; it was conducting the informal inquiry that is part of its duty of further inquiry.  Although both duties are similar (and hence "sometimes conflated" (*In re A.M.* (2020) 47 Cal.App.5th 303, 315),[4] they are distinct duties (compare § 224.2, subd. (e)(2)(C) with § 224.3, subds. (a)(1) & (c); *In re J.S.* (2021) 62 Cal.App.5th 678, 686-688; *Dominic F.*, *supra*, 55 Cal.App.5th at p. 570; *D.S.*, *supra*, 46 Cal.App.5th at p. 1049 ["The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice . . . "]).  Here, the Department never developed the "reason to *know*" Duane was an Indian child that would trigger the duty to give notice; as a result, its inquiry of the tribes was part of its further inquiry and the cases invalidating implied ICWA findings due to the failure to file the formal notices given to tribes are inapt.  Moreover, father's reliance on *In re Louis S.* (2004) 117 Cal.App.4th 622, which applied a "'reason to believe'" standard as the trigger for the duty to give notice, is misplaced because the trigger for giving notice has since been tightened to "reason to

---

4    The danger of conflation is even greater where, as here, the Department mistakenly uses the word "notices" in its reports to describe its informal communications with the tribes.  Read in context, however, it is clear the Department was not referring to the formal notice required when the Department knows or has reason to know an Indian child is involved.

13

know." (See *D.S.*, at pp. 1048-1051 [noting enactments and amendments].)

Because the Department's duty of further inquiry was inadequate, its implied ICWA finding as part of the dispositional order is not supported by substantial evidence and must be vacated. (*K.T.*, *supra*, 76 Cal.App.5th at p. 744 [because agency did not conduct "adequate[]" further investigation, the court "should not have found that ICWA did not apply"]; *D.S.*, *supra*, 46 Cal.App.5th at p. 1050 [court may make finding that ICWA does not apply only if agency's further inquiry was "'proper and adequate'" but no "reason to know" the child is an Indian child was discovered]; § 224.2, subd. (i)(2) [same].)

## II. **What Is the Appropriate Remedy?**

In light of our analysis, the next question we confront is: What is the appropriate remedy when an appellate court determines, *on appeal from an order prior to termination of parental rights*, that the ICWA duty of further inquiry has not been satisfied?[5]

By our count, the California appellate courts have thus far provided five different rules in answering this question when it comes to the duty of *initial* inquiry. The first rule is to affirm the juvenile court's jurisdictional and dispositional findings, to vacate the court's finding that ICWA does not apply, and to remand for the Department to comply with its ICWA duties. (*In re Dominick*

---

[5] This is a different question than what the remedy is when the appellate court determines, *on appeal from an order terminating parental rights*, that the ICWA duty has not been satisfied. The California appellate courts are similarly fractured about how to answer this question as well, but we need not delve into that morass here.

*D.* (2022) 82 Cal.App.5th 560, 563-564, 567-568.) The second rule is to affirm the juvenile court's findings in their entirety, on the rationale that the issue of ICWA compliance remains before the juvenile court at all times and the Department will have time to correct any deficiencies. (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1154; *In re S.H.* (2022) 82 Cal.App.5th 166, 171, 173, 175-179.) The third rule is to dismiss the appeal as moot, on the theory that "no effective relief" may be granted because any ICWA deficiencies can be cured in future proceedings. (*In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638-639 & fn. 2.) The fourth rule is to treat an appeal from a finding that ICWA does not apply as premature (and hence not yet "ripe") because such a finding can necessarily be altered prior to the termination of parental rights. (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461.) And the fifth and (thus far) final rule is to construe the appeal as a writ petition, and to evaluate the merits of the Department's compliance with ICWA. (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 386, 388-389, 390-391.)

We conclude that it is proper to apply the first rule here— that is, to affirm the juvenile court's jurisdictional and dispositional findings (because father does not attack those findings), to vacate the juvenile court's finding that ICWA does not apply (because this includes an "implied finding" that the Department complied with its duty of further inquiry which is not supported by substantial evidence), and to remand for the Department to continue to comply with that duty. (See *In re Emma C.* (March 16, 2023, B318281) [nonpub. opn.] [this Division applied the first rule in an initial inquiry case]; see also *In re E.C.* (2022) 85 Cal.App.5th 123, 155 [for purposes of prejudice, "distinction" between "deficiency with the duty of

15

initial inquiry" and "failure to conduct a further inquiry" "does not result in a different outcome"].) In our view, to unequivocally affirm leaves intact a judicial finding of ICWA compliance that is not—as the parties concede here—supported by substantial evidence; that the juvenile court may make a different finding regarding the Department's compliance with ICWA at some different and later point in time does not, in our view, render the finding before us now sufficiently valid to affirm (under the second rule), or moot (under the third rule), or unripe (under the fourth rule). And where a dispositional order is separately appealable, we see no point in severing the court's ICWA finding and construing just part of the appeal as a petition for writ review (under the fifth rule).

We also conclude that the appeal is not moot. The Department urges that the appeal is moot because the ICWA finding father attacks is from a dispositional order, and some courts have found such appeals to be moot; as explained above, we have opted not to follow that precedent. The appeal is also not moot on the theory that the Department has, since this appeal was filed, fully discharged its duties of further inquiry and notice. It has not. Even the Department's post-appeal efforts do not reveal that it has attempted to contact *all* of mothers siblings or half siblings regarding the missing information regarding maternal grandfather, that it has undertaken other searches to track him down, that it has attempted to contact paternal grandfather or father's siblings, or that it has undertaken efforts to informally contact the two new possible tribes that have

16

popped up—namely, the "Barefoot" and Choctaw tribes.[6]  And although the juvenile court's post-appeal order requiring further inquiry by the Department and specifying that it will make an ICWA finding at the 12-month status review hearing indicates the court's willingness to revisit the ICWA issue, that order does not expressly state that the court made no ICWA finding at the dispositional hearing or vacates that finding.  And even if it were moot, we would exercise our discretion to resolve this appeal to provide further guidance on what the Department has yet to do before it has discharged its duties under ICWA.

---

[6]      We accordingly deny the Department's motion to dismiss this appeal as moot.
        We note that the reference to "Barefoot" tribal heritage in the Department's report either is not accurate or is not to a recognized tribe.

**DISPOSITION**

The jurisdictional and dispositional orders are affirmed in part; the juvenile court's implicit finding that Duane is not an "Indian child" is vacated, and the matter is remanded for further proceedings in which (1) the Department shall make reasonable efforts to inquire of all known and available family members— including maternal and paternal aunts and uncles, maternal grandfather, and paternal grandfather—whether Duane is or may be an Indian child; (2) the Department shall document these efforts to the juvenile court; (3) the juvenile court shall make an express finding regarding ICWA's applicability; and (4) depending on the court's finding, the court and the Department shall proceed in accordance with sections 224.2 and 224.3.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

18