Filed 9/20/23  In re J.V. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re J.V.,<br><br>a Person Coming Under the Juvenile Court Law. | B326747<br><br>(Los Angeles County Super. Ct. No. CK98783) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ROCHELLE V.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Rochelle V. (Mother) appeals from the juvenile court's order terminating her parental rights to her child J.V. (born 2011).[1] Mother's sole assertion on appeal is that the juvenile court failed to fulfill its duties under state law implementing the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). More specifically, Mother claims the court failed to make necessary findings regarding whether ICWA applied to J.V., and that we should therefore reverse the termination of her parental rights and remand for the court to make those findings.

Mother disclaims any Indian ancestry.[2] J.V.'s father A.H. (Father) indicated he might have potential Cherokee ancestry. The record shows proper ICWA inquiry was sent to the three federally registered Cherokee tribes without any response indicating J.V. was enrolled or was the child of a member of the tribe and eligible for enrollment. We find no reason for reversal or remand because the ICWA inquiries made regarding J.V. were adequate, the record indicates no reason to believe J.V. was an

———————————

[1] Mother's two other children, A.V. (born 2001) and A.C. (born 2004), who have a different father than A.V., were also involved in the dependency proceedings. Both have since reached the age of majority and are not the subject of this appeal.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

Indian child, and the court made both express and implied findings supported by substantial evidence regarding ICWA compliance. Accordingly, we affirm.

## BACKGROUND

### A.    Summary of Case

Apart from compliance with ICWA, Mother does not challenge the merits of the juvenile court's rulings. We thus provide only a brief synopsis of them. Dependency proceedings involving J.V. began in January 2013 in San Bernardino County; jurisdiction was based on Mother's abuse of alcohol and drugs, and her leaving the minor unsupervised. Later in 2013, the proceedings were transferred to Los Angeles County. J.V. was placed for a time with paternal grandmother before paternal grandmother passed away in August 2021. In August 2022, the juvenile court terminated family reunification services for Mother. A contested Welfare and Institutions Code[3] section 366.26 hearing occurred on February 1, 2023, at which the juvenile court terminated Mother's parental rights and designated J.V.'s paternal aunt and uncle as the prospective adoptive parents.

### B.    Factual Background Relevant to ICWA

Mother was born in the Caribbean country of Trinidad and emigrated to the United States when she was seven years old. She reported her family was also born in Trinidad. Mother and her relatives consistently denied any Native American ancestry during the dependency proceedings.

---

[3] Unspecified statutory citations are to the Welfare and Institutions Code.

3

Father, who is not a party to this appeal, indicated at the initial detention hearing on January 24, 2013, that he might have Cherokee Indian ancestry. The San Bernardino County juvenile court ordered notice to the Cherokee tribes. The San Bernardino County Department of Children and Family Services (SBDCFS) filed a report with the court in February 2013 providing details of it having given ICWA inquiry notice to the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, the Cherokee Nation, and the Bureau of Indian Affairs (BIA) along with proofs of service.

BIA acknowledged receipt of SBDCFS's inquiry and directed SBDCFS to any responses received from the Cherokee tribes. The United Keetoowah Band of Cherokee Indians responded on February 15, 2013 that J.V. was not descended from anyone on the Keetoowah Roll and it would not intervene. The Cherokee Nation requested additional information regarding the middle initial of J.V.'s paternal grandfather.[4] SBDCFS replied to the Cherokee Nation on February 25, 2013, indicating it "ha[d] contacted the parents/relatives" and that paternal grandfather's middle initial was unknown. The Cherokee Nation did not further respond. The Eastern Band of Cherokee Indians appears never to have responded.

At the jurisdiction/disposition hearing on March 14, 2013, SBDCFS reported that it had initiated notice to the Cherokee tribes but had not yet received confirmations. The court found notice was initiated and that ICWA might apply.

---

[4] The Cherokee Nation also requested additional information about the paternal grandmother of J.V.'s step-siblings, which SBDCFS then supplied.

In April 2013, the case was transferred to Los Angeles County.  The Los Angeles County Superior Court accepted jurisdiction in June 2013.  A September 20, 2013 Los Angeles County Department of Children and Family Services (DCFS) status report stated ICWA did not apply; the juvenile court nevertheless ordered a supplemental report to address possible Indian heritage on Father's side.  At a November 14, 2013 hearing, DCFS informed the court that SBDCFS had sent notices to the Cherokee tribes "so the notice is already done," and that prior to the case transfer the San Bernardino court "was just waiting for the letters or return receipts, et cetera."  The juvenile court stated that based on the information before it, the court "has no reason to know the child would fall under the [ICWA]" but ordered DCFS to check the file for any return receipts or letters from the tribes, and if any existed to forward them to the court.

ICWA was next addressed in a status review report dated April 25, 2014, in which DCFS said ICWA did not apply.  DCFS reports on June 5, 2014, June 23, 2014, and August 13, 2015 similarly stated ICWA did not apply.  DCFS reports on January 7, 2016 and February 28, 2022 erroneously stated the San Bernardino court found on January 24, 2013 that ICWA did not apply.

The juvenile court addressed ICWA at an August 25, 2022 hearing where it ordered the section 366.26 report include ICWA inquiries.  On August 25, 2022, and again on November 1, 2022, paternal aunt and uncle denied Indian ancestry.  As of November 3, 2022, Father stopped responding to requests for further information and did not participate in the proceedings thereafter.

The section 366.26 report, dated January 5, 2023, again erroneously stated the San Bernardino court found on January 24, 2013 that ICWA did not apply. The juvenile court did not explicitly address ICWA at the February 1, 2023 hearing when it terminated Mother's parental rights. It began the hearing, however, by stating that it was "considering all of the contents of the court file" in connection with the rulings it would make during the hearing, and that while it intended to focus on some specific documents that it then named for the benefit of counsel, "as I indicated, I will be considering the entire contents of the court file." The court then proceeded to terminate Mother's parental rights without applying the heightened standard that would govern if J.V. was an Indian child. (See § 366.26, subd. (c); Cal. Rules of Court, rule 5.486.)

**DISCUSSION**

Mother does not challenge the adequacy of the ICWA inquiries made here or claim deficiencies in any particular inquiry. She instead argues the court did not review or otherwise make itself aware of those inquiries and any responses to them, such that it did not discharge its obligation to confirm that DCFS conducted an adequate investigation and to determine whether ICWA applied to J.V.'s proceedings. Mother argues we should remand for the court to review the record and make such findings.

**A. Applicable Law**

"At the outset of a dependency case, the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be, an Indian child. 'The child welfare department's initial duty of inquiry includes "asking

6

the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." [Citation.]' [Citation.]" (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507, fn. & italics omitted.) State law further mandates that "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

A juvenile court must make findings as to the applicability of ICWA and its failure to do so is error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Such findings may be express or implied. When they are implied, "the record must reflect that the court considered the issue and decided whether ICWA applies." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.) We review juvenile court findings for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.) "All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)

**B.    Analysis**

In the recent past, claims about the adequacy of ICWA inquiry by county social services agencies have inundated appellate courts statewide, and the issue is currently pending before our Supreme Court. *(*E.g., *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572; *In re*

7

*Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578.) This is not one of those many cases. The court record here contains the ICWA inquiries to the Cherokee tribes; there is no dispute about the form of those inquiries, the associated proofs of service, and that no response was received indicating J.V. was an Indian child as described by ICWA.[5]

Perhaps due to the transfer of the case between counties early in the proceedings, DCFS erroneously reported more than once that the San Bernardino court found on January 24, 2013, that ICWA did not apply. Instead, on that date, the San Bernardino court had ordered notice to the Cherokee tribes, indicating ICWA could potentially apply. While DCFS on occasion wrongly reported that the San Bernardino court determined ICWA did not apply in 2013, that error is

---

[5] Mother's reply brief argues for the first time that "paternal grandfather's middle name was not further investigated." We need not address this argument because it was raised for the first time in the reply brief (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1269), but we note in any event that it is factually inaccurate. After the Cherokee Nation requested the information, the record shows SBDCFS contacted Father and his relatives to identify any middle name or initial for paternal grandfather and came up empty. SBDCFS thus provided the Cherokee Nation with all available information. ICWA requires "reasonable inquiries regarding a child's possible Indian ancestry" (*In re Y.M.* (2022) 82 Cal.App.5th 901, 909), and we cannot fault SBDCFS for failing to supply information when it conducted appropriate due diligence to attempt obtaining the requested information but was unable to do so. (*In re K.H.* (2022) 84 Cal.App.5th 566, 618 ["Not every defect in the agency's inquiry will be problematic, as the inquiry need not be perfect or exhaustive" but instead "adequate, proper, and duly diligent"].)

inconsequential.  This is because ICWA did not in fact apply to J.V. and the juvenile court so found in 2013, albeit on a different date than the one cited by DCFS.

In 2013, after the case was transferred to Los Angeles County, the juvenile court (Commissioner Jacqueline Lewis) found that ICWA did not apply.  As of that time, the court file showed that proper ICWA inquiry had been made, and had resulted in no evidence suggesting J.V. was a member of any Cherokee tribe or that his Father was a member such that J.V. was eligible for enrollment.  At the November 14, 2013 hearing, the juvenile court was aware that SBDCFS had sent notices to the Cherokee tribes, that not all the tribes had yet responded, and that no tribe had yet identified J.V. as an Indian child. Given that the inquiries were sent in March 2013—more than seven months before the November 14, 2013 hearing—the juvenile court properly found that based on the information before it that the court "ha[d] no reason to know the child would fall under the [ICWA]."  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 15 [noting under prior version of statute, "After proper notice has been given, . . . if neither the BIA nor any tribe provides a determinative response within 60 days, then the court may find that ICWA does not apply to the proceedings"]; *In re M.W.* (2020) 49 Cal.App.5th 1034, 1047 [no reason to believe minor was Indian child where "two tribes were given nearly two months within which to provide a determinative response to the [d]epartment's ICWA inquiry" and did not respond].)

Mother requests that we infer the court did not sufficiently review the file for ICWA compliance because the court did not state it had done so and because the court ordered DCFS to forward any tribal return receipts or letters (suggesting the court

9

was unaware they were already in the file).  But we review the entire record, not just any portions referred to by the juvenile court, to assess whether the record discloses substantial evidence such that a reasonable trier of fact could find the order appropriate.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  Such substantial record evidence exists here.[6]  Nor does the court's order to supplement the court file vitiate the substantial evidence that was already in the file.  The court's supplementation order was appropriate given that both the court and DCFS had a "continuing duty to inquire whether" J.V. "is or may be an Indian child."  (§ 224.2, subd. (a).)

Nothing occurred after this November 14, 2013 hearing to spur a re-evaluation of the court's determination that ICWA did not apply.  After the November 14, 2013 hearing, Mother and maternal grandfather denied Indian heritage, as did paternal aunt.  Father stopped participating in the proceedings and supplied no further information.  No further responses were received from BIA or any of the Cherokee tribes.  Thus, the court had no impetus requiring it to revisit its determination that ICWA did not apply.

---

[6] We find Mother's reliance on *In re Louis S.* (2004) 117 Cal.App.4th 622 inapposite.  In that case, the social services agency did not file the notices or return receipts with the juvenile court, leading the Court of Appeal to hold it was impossible to determine from such an incomplete record whether the notices provided the tribes with relevant information and a meaningful opportunity to evaluate whether the minor was an Indian child.  (*Id*. at pp. 628-629.)  Here, in contrast, the record contains both the correspondence with the tribes and any responses thereto.

In addition to its express finding in November 2013, on February 1, 2023, the juvenile court (now Judge Daniel Zeke Zeidler) impliedly found at the section 366.26 hearing that ICWA did not apply. The court stated it was considering the entire file (which included all the evidence regarding correspondence with the tribes, proofs of service, and the like) and then proceeded to terminate Mother's parental rights without applying the heightened standard that would have governed if J.V. was an Indian child. (See § 366.26, subd. (c); Cal. Rules of Court, rule 5.486.)

Contrary to Mother's argument, the court's ability to make such an implied finding was not impacted by DCFS's failure to correct its error concerning when in 2013 the court found ICWA did not apply, or by any DCFS failure to re-provide the court with responses from the Cherokee tribes. The record reflects the court considered the entire file, from which the DCFS error regarding the 2013 date is apparent and which contains the documents that Mother faults DCFS for not supplying a second time. In short, nothing in the court file suggested its contents, when fully considered, would have misled the court. Thus, nothing before us suggests we should disregard the court's implied finding that ICWA did not apply by virtue of the legal criteria it applied when terminating Mother's parental rights after considering the entire record. (*In re Asia L.*, *supra*, 107 Cal.App.4th at p. 506.)

# DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.